**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**CHICAGO UNION STATION COMPANY, Defendant-Appellee.**

No. 12169.

United States Court of Appeals
Seventh Circuit.

March 28, 1958.

Rehearing Denied April 28, 1958.

Cecil E. Magid, Harry Okin, Chicago, Ill., for appellant. James P. Chapmam, Weissenbach, Hartman, Craig, Okin & Magid, Chicago, Ill., of counsel.

Erwin W. Roemer, Chicago, Ill., for appellee. Joseph P. Carr, Chicago, Ill., of counsel.

Before FINNEGAN and HASTINGS, Circuit Judges, and MERCER, District Judge.

FINNEGAN, Circuit Judge.

Late one afternoon in September, 1955, Mintz, a jewelry manufacturer's representative, went to the Union Station, Chicago, Illinois, to take a train for Minneapolis. When Mintz arrived at the defendant's, (Chicago Union Station Company), railroad station he checked his two sample cases and brown two-suiter bag with defendant's Red Cap No. 71, named Rettig, who gave Mintz three claim stubs for 25¢ each. Mintz, testifying on direct examination, related substantially the following regarding his interchange with Rettig:

"I told him 'Here are three bags to be loaded on the train for Minneapolis,' and he gave me three stubs, and I told him to be careful, that they were valuable, and to make sure it doesn't roll off the truck, to put it flat, and he said, 'All right; I will claim the checks when you board the train.' I gave him a dollar for the three bags. I think he told me 'Make sure you have your checks with you, because I will call out the number' and I said, 'I know that.' I had no other conversation with the red cap other than that I told him to be careful of the bags and that they were valuable and to make sure the one on wheels don't fall off the truck.

"I left the Red Cap and made a call home. I know a secret door through which I went down to the train to avoid waiting for all the people. I noticed a Red Cap and I asked him if he was Red Cap 71. He was busy unloading and didn't answer. I was first to board the train and I made sure I got the rear seat to reserve space for the bags.

"It was only a few minutes. I asked the porter to see if my bags were on the platform; the man couldn't find it. The train started * * * When I delivered these bags to the Red Cap on September 11, 1955 they had in them the cases of trays and cases of jewelry, and my watches and there was another case in which the watch cases were."

What subsequently transpired could hardly be controverted by Mintz personally, and, indeed, the following findings of fact are undisputed; " * * * redcap No. 71 had about 27 or 28 bags on his truck, which was a full load. About that time a man approached him and said 'We are not making the trip; we are going to drive up by automobile to Minneapolis.' The redcap inquired as to who was not going to make the trip on the train; and this man said, 'These three bags,' and he pointed out the three bags for which the redcap had issued the three baggage checks. The redcap informed the man that he was required to get the claim checks; and that if he did not turn over the claim checks the man would have to send to Minneapolis for the bags because that is where they would be. The man replied that his brother had the checks and was telephoning. The redcap gave the * * * man ten more minutes to produce the * * * baggage checks. About five minutes later, the man who wanted the bags taken off the truck * * * returned * * *. Upon being asked where the claim checks were, he said, 'My brother is just finishing his telephone call; he will be here. Will you please bring these bags out to the cab for me?' The redcap directed the man to go to the northside cab court where people ordinarily came into the station instead of the southside cab court where they go out. The redcap then took the three bags covered by the three baggage checks off his truck and carried them to a waiting Yellow cab in the incoming cab stand. The redcap then placed the bag with the wheels on it in the front compartment of the cab; and the man claiming these bags put the suitcase in the rear passenger space of the cab. Then the redcap and the man waited for the return of his brother, who was allegedly telephoning. As the time for the departure of the train was getting very close, the redcap

sought to obtain the help of another redcap, either to await the return of the brother or to take the baggage truck of redcap 71 to the train for the delivery of the baggage to the passengers. As the redcap opened the door leading into the train concourse from the cab stand to look for another redcap, he heard the taxicab starting and saw it pull away.

"The three baggage checks were not re-delivered to the said redcap or to any other employee of the defendant; and the said jewelry cases were not recovered by Harry L. Mintz or the plaintiff."

St. Paul Fire and Marine Insurance Company, plaintiff, covered this loss and after paying $34,605.58 to three of its assured, who, including Mintz, owned various pieces of the stolen jewelry, became subrogated to their rights, and as subrogee commenced this action for recovery of the total amount of indemnity paid by it. Plaintiff appealed from judgment for the defendant, and dismissal of its case, and now seeks reversal in our court and, entry of judgment in its favor. No request for a new trial is made. The critical facts are uncontroverted. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.

Treatise writers display a marked tendency to generalize about bailments and their ideas are apt to reproduce themselves for application in undiscriminating factual situations. Nothing in this shallow evidentiary showing before us establishes defendant's knowledge of the jewelry inventory covertly carried in two cases by Mintz. Defendant's unwitting possession of the jewelry is an insufficient basis for attaching absolute liability on these facts. Michigan Cent. R. Co. v. Carrow, 73 Ill. 348. Bailment is a consensual relation and allowance of recovery, by this plaintiff, would mean holding defendant liable for failure to take precautions with unknown chattels. See e. g. Crosby v. 20 Fifth Avenue Hotel Co., 1940, 173 Misc. 604, 17 N.Y.S. 2d 498; Stuart v. D. N. Kelley & Son, 1954, 331 Mass. 76, 117 N.E.2d 160.

There is, we think, liability for at least the nominal value of the two sample cases *qua cases* (excluding jewelry) and the two-suiter bag and its contents bailed to defendant. D. A. Schulte, Inc., v. North Terminal Garage Co., 1935, 291 Mass. 251, 197 N.E. 16, 17. But apparently the subrogee-plaintiff only paid out on the value of the lost jewelry and in any event makes no claim for, and hence cannot recover, such nominal damage.

Judgment affirmed.