**TISHMAN & LIPP, INC., Plaintiff,**

v.

**DELTA AIRLINES, Defendant.**

**No. 64 Civ. 2751.**

United States District Court
S. D. New York.

Oct. 25, 1967.

Rein, Mound & Cotton, New York City, for plaintiff. Robert L. Horkitz and John P. Wourms, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant. John L. Conners, New York City, John V. Mc-Auliffe and Peter E. Thauer, New York City, of counsel.

## OPINION

POLLACK, District Judge.

At the close of the plaintiff's case tried to the court and a jury, and again at the close of the entire case, the defendant moved for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure and for a dismissal of the complaint; or, in the alternative, that judgment be entered against it for $50.00 on the ground that as a matter of law it is in no event liable to the plaintiff beyond that amount. The substance of the action was for recovery of the value of jewelry contained in a jewelry sample case which had been lost. Being of the opinion that plaintiff was not entitled to recover for the jewelry, the Court directed a verdict for the defendant. Subsequently it appeared that plaintiff intended to claim for the sample case as well as the contents thereof and the Court thereupon amended its direction to a grant of judgment for plaintiff in the amount of $50.00.

The case comes to this court by removal from the Supreme Court of the State of New York on the ground of diversity of citizenship; jurisdiction is further posited on the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 et seq.

The plaintiff is a New York jewelry concern. The defendant Delta Airlines, Inc. (Delta hereafter) is a Louisiana corporation operating as an air carrier of passengers and their baggage as well as a carrier of air freight under authority granted to it by the Civil Aeronautics Board (C.A.B. hereafter). Prior to the time of the occurrence in suit, Delta in pursuance of federal requirements, 49 U. S.C. § 1373, had filed with the C.A.B. its tariffs covering its rules, regulations and rates for the carriage of passengers and their baggage as well as for the transportation of air freight.

Plaintiff's president, Mr. Tishman, had purchased air transportation with defendant which included a trip on March 19, 1964 from New Orleans to New York. Mr. Tishman presented himself at the Delta passenger counter at the New Orleans airport for the purpose of checking his luggage. Mr. Tishman's luggage consisted of an attaché case which he carried with him aboard the plane, a suitcase containing personal belongings which he checked as baggage under his free weight allowance of 40 lbs., and two separated sections of his sample case, which, for reasons and with consequences as will appear *infra,* he elected to have transported as air freight baggage rather than as excess passenger baggage. He received "baggage airbills" for the two sample case sections together with an excess baggage ticket and receipt evidencing payment of $10.80, the tariff charge for air freight weighing 60 pounds. Each airbill recited "BAGGAGE CHECKED SUBJECT TO AIR FREIGHT TARIFF INCLUDING LIMITATIONS OF LIABILITY THEREIN CONTAINED." The excess baggage ticket and receipt was stamped "SUBJECT TO AIR FREIGHT TARIFFS." Had Mr. Tishman chosen to check the sample cases as excess baggage the cost to him under the passenger tariff would have been $26.12.

At no time did Mr. Tishman reveal to the defendant's clerk in New Orleans what was enclosed in the sample case sections, nor did he declare any specific value therefor.

On arrival in New York, Mr. Tishman went to the baggage claim area to obtain his baggage and one of the sample cases was missing and never found. Mr. Tishman immediately asserted that it contained jewelry worth $50,000., demanded

an investigation and ultimately brought this action.

The tariff rules of Delta filed with C. A.B. here relevant [1] had not up to the time of the loss been declared invalid by the C.A.B. for any reason.

The filed air freight tariffs in effect during March, 1964, provided (1) that jewelry was unacceptable for shipment as baggage and was not to be enclosed in baggage and (2) that the carrier would not be liable for any loss of jewelry unless it was specifically described on the airbill.[2] Plausible reasons appear for such tariffs dealing as they do with the carriage of items of exceptional value which create special problems, including notice of the possible need of special handling or attention.

The tariffs further provided that the defendant's liability for loss of air freight due to its negligence was limited to 50¢ per pound (a minimum of $50.00), unless a higher value was declared by the shipper [3], and an additional charge of 10¢ per $100.00 value in excess of 50¢ per pound paid therefor. Upon such declaration and payment—optional with the shipper—defendant would become liable up to the value so declared. Thus, had plaintiff chosen to provide for full liability for loss of the two sample cases (said to contain approximately $75,000 of jewelry) the cost to him would have been the $10.80 base rate plus $75.00 or a total of $85.80.

The defendant contended that the plaintiff, having elected to transport its jewelry by air freight, is bound by the applicable air freight tariffs; that, having violated those provisions with respect to carriage of jewelry as baggage, and having failed to disclose the contents of the sample cases or declare a value therefor, it is precluded from any recovery.

The plaintiff advanced several objections to disposition of the case on the basis of the air freight tariffs. First, plaintiff contended that the filed tariffs on which the defendant relied are invalid and unreasonable and have been declared unlawful by the C.A.B.; second, that

1. The defendant filed two groups of tariff rules pertaining to transportation of baggage and other goods: Local and Joint Passenger Rules, Tariff PR–4, C.A.B. #43 and Air Freight Rules, Tariff, 1–A, C.A.B. #13. The tariff provisions dispositive here are these pertaining to air freight, the plaintiff having elected to ship his sample cases by air freight.

2. Air Freight Tariff Rule No. 2.5
(c) Money, jewelry, negotiable paper and like valuables, liquids, fragile or perishable articles are not acceptable for shipment as baggage and must not be enclosed in baggage.
Air Freight Tariff Rule No. 3.2
(a) The carrier shall not be liable for loss, damage, delay or other result caused by:
(4) Violation by the shipper, consignee, or any other party claiming an interest in the shipment, of any of the rules contained in this tariff or other applicable tariffs, including, but not confined to, improper or insufficient packing, securing, marking, or addressing, and failure to observe any of the rules relating to shipments not acceptable for transportation or shipments acceptable only under certain conditions.

(c) The carrier shall not be liable for any loss of money, bullion, bonds, coupons, jewelry, precious stones, valuable papers or other articles of extraordinary value unless such articles are specifically described on the airbill, provided that carrier shall not be liable in any event for such articles enclosed in or shipped as baggage.

3. Air Freight Tariff Rule No. 3.3
(a) In consideration of carrier's rate for the transportation of any shipment, which rate, in part, is dependent upon the value of the shipment as determined pursuant to Rule 4.3, the shipper and all other parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of Rule 4.3 and that the total liability of the carrier shall in no event exceed the value of the shipment so determined.
Air Freight Tariff Rule No. 4.3
(a) 1. A shipment shall be deemed to have a declared value of $0.50 per pound (but not less than $50.00) unless a higher value is declared on the airbill at the time of receipt of the shipment from the shipper.

having deviated from its own tariffs by offering air freight services to Mr. Tishman, the defendant lost the benefit of their protection, and that, therefore the defendant is relegated to its common carrier's insurer's liability; third, that the tariff rules of the defendant are confusing and contradictory, and that one such rule, purporting to impose liability here, should be given effect over an exculpatory provision; fourth, that the defendant, its agents, servants or employees were guilty of gross negligence or conversion, and had lost the benefit of the tariff's protection; and finally, that the defendant was a common law bailee of plaintiff's jewelry, liable for negligent loss thereof.

■ To the extent that they are valid, the tariffs filed with the C.A.B. constitute the contract of carriage between the parties. Lichten v. Eastern Airlines, Inc., 189 F.2d 939, 25 A.L.R.2d 1337 (2 Cir. 1951); Rosch v. United Air Lines Inc., 146 F.Supp. 266, at 267 (S.D.N.Y. 1956). The shipper is deemed to have knowledge of the provisions of the tariff, irrespective of his actual knowledge thereof.[4] Furrow and Co. v. American Airlines, Inc., 102 F.Supp. 808, at 809 (W.D.Okl.1952); Boston & Maine Railroad v. Hooker, 233 U.S. 97, at 110–111, 34 S.Ct. 526, 58 L.Ed. 868 (1914).

Plaintiff, however, attacked Delta's applicable tariff provisions as both invalid, i. e., not properly acceptable by the Board, and unreasonable.

■ It is beyond dispute that the Board could properly accept tariffs containing exculpatory rules such as are here involved. Lichten v. Eastern Airlines, supra. There is no provision of the Federal Aviation Act of 1958 or its predecessor, the Civil Aeronautics Act of 1938 which prohibits exemptions from liability for loss or damage to specified property caused by the carrier, regardless of fault. By way of contrast, the Interstate Commerce Act, 49 U.S.C. § 20(11), contains a specific provision which prohibits exemptions from liability for loss due to the carrier's negligence. The court in *Lichten* relying on the statutory contrast denied recovery for loss of jewelry enclosed in passenger baggage in violation of the air carrier's tariff rules. Cf. Berkman v. Trans World Airlines, Inc., 209 F.Supp. 851 (S.D.N.Y.1962).

■ Similarly, there is ample support for a finding of validity of Delta's tariff provision limiting liability to 50¢ per pound of air freight baggage or a minimum of $50.00, absent a declaration of a special or higher value by the shipper. Vogelsang v. Delta Air Lines, Inc., 302 F.2d 709, 712 (2d Cir. 1962); Cf. Herman v. Northwest Airlines, Inc., 222 F. 2d 326 (2d Cir. 1955), cert. denied 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751.

Assuming that Delta's air freight tariff rules are properly acceptable for filing under statutory authorization, the further question raised by the plaintiff is whether they are reasonable. Initially the inquiry for the court is whether the court should entertain a suit requiring the determination of such a question and whether the courts are able to grant relief thereon.

■■ In *Lichten* the court stated that it is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency in the first instance, and that under this doctrine of "primary jurisdiction" the reasonableness of the rule could be raised only after the exhaustion of administrative remedies. It is held to be essential in order to assure uniformity that the Board have "primary jurisdiction" to determine the issue of reasonableness.

The "primary jurisdiction" rationale, however, has been circumscribed by the decision of the Supreme Court in T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959)

---

4. The C.A.B., in a recent decision, has upheld the practice of leaving to the discretion of the airlines the manner in which notice of the tariffs is given to passengers or shippers. See Baggage Liability Rules Case, C.A.B. Docket 15529, September 19, 1966.

which held that the Interstate Commerce Commission was without power to determine that tariffs filed under the Motor Carrier Act (as then in force) were retrospectively invalid. In that case, the United States, as shipper, defended a claim for motor carriage fees on the grounds that the rate on which the fees were based was unreasonable, at the time of the shipment. The Court ruled that the shipper was not entitled to proceed in the first instance before the I.C.C. The Court noted that Congress had withheld authority from the I.C.C. to find Motor Carrier tariff provisions unreasonable as to the past. Since such authority was specifically granted to the I.C.C. with respect to water and rail carrier tariffs, the Court considered this omission in the Motor Carrier Act dispositive.

In Vogelsang v. Delta Air Lines, supra, decided since *T.I.M.E.*, the court declined to refer the issue of retrospective reasonableness of a tariff to the C.A.B. The opinion of the court indicated that the Board "may well be precluded" from ruling on the tariff retrospectively, but relied primarily on the fact that the Board had recently expressed approval of the tariff provisions there at issue. The court did not itself rule on the question of reasonableness, or whether a charge of unreasonableness of a tariff states a cause of action where the Board is precluded from retrospective invalidation of a tariff.

■ The statutory parallel between the Motor Carrier Act and the Federal Aviation Act, as well as legislative history subsequent to the decision in *T.I.M.E.* compel the conclusion that *T.I.M.E.* precludes referral of the issue of past reasonableness of a tariff to the C.A.B. Not only is the authority to invalidate a tariff retrospectively absent from the Federal Aviation Act, but attempts by the C.A.B. to obtain such authority (See C.A.B. Annual Report 1963 and 1964) have been rejected by Congress. These unsuccessful attempts are to be contrasted with the congressional additions since *T.I.M.E.* to the Motor Carrier Act which now includes a provision for retrospective invalidation.

■ The statutory procedure for change of tariff provisions seeks to insure the stability of the tariff structure. Air carriers can change tariff provisions only on advance notice and the Board may on its own initiative or in response to a complaint, suspend the effectiveness of the proposed provision while its lawfulness is studied and considered. It is evident that Congress has not seen fit to add to these procedures the power to grant reparations or to rule retrospectively.

The absence of jurisdiction in the C.A.B. to determine retrospective unreasonableness does not necessarily mean that such a claim presents an issue which a federal court can decide. In *T.I.M.E.*, "the Government concede[d] [that] * * the question of reasonableness of past rates cannot itself be decided in the courts," (p. 468, 79 S.Ct. p. 907) so that that issue was not directly in controversy. However the Court declined to imply a cause of action under the Motor Carrier Act for violation of the duty on motor carriers not to charge or collect other than "reasonable" rates in favor of shippers injured by violation thereof. (p. 469, 79 S.Ct. 904) Sections 216(b) and (d) of the Motor Carrier Act at that time provided that:

"(b) It shall be the duty of every * * carrier * * * to establish, observe, and enforce just and reasonable rates, charges, and classifications, and just and reasonable regulations and practices relating thereto * * *".

\* \* \* \* \* \*

"(d) All charges made for any service rendered or to be rendered by any common carrier * * * shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof, is prohibited and declared to be unlawful. * * *"

The Supreme Court cited Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, at p. 251, 71 S.Ct. 692, at p. 695, 95 L.Ed. 912 (1951), which interpreted similar lan-

guage in the Federal Power Act, which also declares unreasonable rates to be unlawful as "a criterion for administrative application in determining a lawful rate" rather than "as a justiciable legal right". In *Montana-Dakota* it was held that such a provision does not create a basis for the recovery in court of unreasonable past rates.

Citing *T.I.M.E.*, the Court of Claims in Campbell "66" Express, Inc. v. United States, 302 F.2d 270, 271, 157 Ct.Cl. 365 (1962) held that "This court neither has the authority to determine the reasonableness of a motor carrier's past charges when the shipper challenges them as being unreasonable, nor the authority to refer the issue of reasonableness of such charges to the Commission."

■ The language of section 216(b) of the Motor Carrier Act was identical in every important respect with the language of section 1375(a) of the Federal Aviation Act. There is no parallel to section 216(d) in the Federal Aviation Act. Furthermore, as pointed out in *T. I.M.E.*, 359 U.S., at page 470, 79 S.Ct. 904, section 9 of Part I of the Interstate Commerce Act (relating to rail carriers) 49 U.S.C. § 9, gives an injured shipper the right to petition the I.C.C. for reparations or to sue therefor in the District Court. The Federal Aviation Act contains no such provision. Especially where, as here, Congress has refused to amend the Federal Aviation Act to include a reparations section, it is apparent that a shipper may not have the issue of retrospective unreasonableness of a tariff determined by a court.

It is urged however that the remedies afforded by the Federal Aviation Act are not exclusive; that section 1506 of that Act provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." The plaintiff asserts a common law right to have the tariff provisions declared void as against public policy. Prior to *T.I.M.E.*, such a right was assumed by the Supreme Court to have existed at common law. Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U.S. 426, at 436, 27 S.Ct. 350, 51 L.Ed. 553 (1906); Arizona Grocery Co. v. Atchison, Topeka and Santa Fe Railway Co., 284 U.S. 370, 383, 52 S.Ct. 183, 76 L.Ed. 348 (1931.)

In *Texas & Pacific Railway Co.*, supra, however, the Supreme Court held that such a right was extinguished by the Interstate Commerce Act, notwithstanding section 22 thereof, identical to section 1506 of the Federal Aviation Act, supra. Ruling on a complaint by a shipper that the railroad's rates were unreasonable, the Court concluded that if it undertook to determine the reasonableness of rates

" * * * it would come to pass that a shipper might obtain relief upon the basis that the established rate was unreasonable, in the opinion of a court and jury, and thus such shipper would receive a preference or discrimination not enjoyed by those against whom the schedule of rates was continued to be enforced." 204 U.S. at 440, 27 S.Ct. at 355.

The Court went on to deal with the shipper's contention that the Commission could, subsequent to the Court's determination, change the rates as to all shippers. The Court said that this course of action would frustrate the Congressional policy that rates be uniform and nondiscriminatory:

"For if, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible * *. Indeed, the recognition of such a right is wholly inconsistent with the administrative power conferred upon the Commission, and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed." 204 U.S. at 440–441, 27 S.Ct. at 355.

The Supreme Court in *T.I.M.E.*, supra, explained the basis of the ruling in *Texas & Pacific Railway Co.* as follows:

"It is important to note that this conclusion did not rest upon the fact that under Part I the I.C.C. had reparations authority with respect to unreasonable charges paid by shippers, but instead was evidently dictated by the broader conclusion that the crucial question of reasonableness could not be decided by the courts." 359 U.S. at 473, 79 S. Ct. at 910.

The plaintiff in this case contended, however, that the court can refer to the C.A.B. the question of the present reasonableness of the tariff provisions here at issue, and thereafter, itself rule upon past unreasonableness. However, as was said in *T.I.M.E.*, in response to a similar proposal, "[n]o convincing reason has been suggested to us why Congress would have wished to omit a direct reparations procedure, as it has concededly here done, and yet leave open to the shipper the circuitous route contended for." (359 U.S. at 474, 79 S.Ct. at 910).

Finally, plaintiff's contention that the tariff provisions relied on have been declared unlawful by C.A.B. does not withstand scrutiny of the Board's decision upon which this contention is based.[5] Furthermore, there was no invalidation of the tariffs here applicable in or prior to March, 1964.

The holding that the question of reasonableness presents no issue for adjudication by this court does not preclude

5. The *Baggage Liability Rules Case*, referred to at note 4 supra discussed indirectly the tariff provisions at issue here. In its opinion, the Board discussed the then current tariff exempting airlines from liability for the loss of jewelry carried as baggage. The Board ruled that the airlines could not thereafter refuse to carry jewelry as baggage, but that they could limit their liability therefor to $500. The Board also ruled that the minimum liability for baggage should be raised from $250 to $500 in keeping with a general rise in value of goods carried. With respect to jewelry and other extra-valuables not checked as baggage, the Board ruled that " * * * a declaration of value on * * * valuables in excess of the carrier's limitation of liability ($500) shall be accepted by the carrier when such valuables are not included in checked baggage." (emphasis added).

It is clear from the Board's opinion, first, that as to baggage the carriers could reasonably limit liability for loss of jewelry to $500 and, second, as to jewelry not included in checked baggage a declaration of value would suffice to require extra coverage. It should be noted that Delta's tariff at the time of the loss, more than two years before the Board's decision, provided for excess coverage of jewelry where value was declared [see tariff rules 3.3(a) and 4.3(a) (1)], and that they conflicted with the Board's subsequent ruling only in that jewelry was not at the time acceptable for shipment as baggage, and that the baggage limitation of liability was $250.

In connection with the case, the following excerpt from the trial examiner's findings which were submitted to the Board are particularly enlightening:

"The problems a carrier faces transporting valuables worth no more than the limit of liability are substantially the same as those it meets carrying checked baggage of the same value containing items not within the definition of valuables. On the other hand, the carriers' concern over the problems of fraudulent claims and baggage security should be considered significant at the point of extra-valuation. Valuables are clearly distinguishable from other articles when, for example, they consist of expensive jewelry or the sample case containing goods valued at thousands of dollars. Recognition of a distinction between valuables and extra-valuables within the definition seems reasonable for the purpose of prescribing the lawful rule * * *. Because of the special problems of transporting articles of exceptional value, such articles in checked baggage need not be subject to a declaration of excess value since they may be handled by alternative means."

"The alternatives open to the passenger who must carry valuables worth more than the carrier's limit of liability include retention of the items on his person, the use of air freight or air express, and other special services especially designed for the purpose. Considering the problem which responsibility for the carriage of items of exceptional value would create for the carriers, these alternatives are reasonable substitutes for the protection afforded by a declaration of extra value (for checked baggage)." (p. 24).

attacks which call into question conformity with the requirements of due process of law. However, no such claim has been made here.[6]

The plaintiff contended that the defendant would have refused to carry its sample cases had Mr. Tishman revealed their contents. The filed tariffs provide otherwise. Rule 3.2(c) of the tariff, quoted supra, note 2, provides that the carrier shall not be liable for loss of jewelry unless specifically described on the airbill. If so described, Rule 2.3 of the tariff, providing that "Except as otherwise provided in this and other applicable tariffs, all property is acceptable for transportation [only when all tariff rules have been complied with]" required the acceptance of jewelry as air freight. Rules 3.3(a) and 4.3(A)(1) quoted supra, note 2, afford the shipper the opportunity to declare the value of jewelry giving rise to commensurate liability by the airline in the event of loss. No evidence adduced at the trial indicates that the defendant would have acted otherwise than in accordance with its tariff. There is therefore no merit to the plaintiff's claim that it would have been denied shipment or insurance for its jewelry.

The plaintiff next contended that the defendant violated its own tariff by carrying plaintiff's jewelry by air freight in that the defendant charged a discriminatory rate for such service, gave preferential treatment in connection therewith, and did not use the correct form of airbill. On these assumptions, the plaintiff claimed that the defendant could not avail itself of the protection of its tariff and must be relegated to its common law common carrier's liability as an insurer.

The record is devoid of any evidence of a discriminatory rate. Plaintiff was charged the regular air freight rate to ship its sample cases via air freight. Any passenger who so desired was privileged to ship baggage in excess of the 40 pound free allowance via air freight.

■ The lower rate applicable to air freight shipments as opposed to shipment of excess baggage pursuant to the passenger tariffs did not constitute a discriminatory deviation from its tariff on the part of the defendant.

■ Nor did plaintiff receive preferential service. No evidence was presented that other passengers using air freight services for excess baggage or articles for which liability was disclaimed under passenger tariffs were accorded treatment different from that given plaintiff. The defendant's Air Freight Tariff Rule 3.10 "Availability of Equipment and Space" required that the "carrier * * * determine, on a reasonable and not unjustly discriminatory basis, the priority of carriage as between shipments * * * ". Assuming that the defendant's jewelry sample cases were given priority over goods shipped via air freight by non-passengers such treatment was not "unreasonably discriminatory." Presumably it would be more important for a passenger to have air freight meant to accompany him on his trip arrive at its destination as soon as possible after his arrival, than for a non-passenger to be assured of such service.

The "airbill" handed to Mr. Tishman upon his delivery of the sample case to defendant's clerk was not in violation of the applicable tariff provision. Rule 1.1(a) of the defendant's Air Freight Tariff defined an airbill as "(i) Uniform Airbill, (ii) The Internatonal Air Waybill, or (iii) Other non-negotiable shipping document issued by the carrier." The coupon which constituted the airbill in the transaction here at issue constituted a "non-negotiable shipping document". The plaintiff contended that the Interline Ticketing Agreement, to which the defendant was a party, required the use of the so-called Uniform Airbill. The

---

6. See *Baggage Liability Rules Case*, notes 4 and 5, supra. The thorough investigation of the propriety of the tariffs and the decisions reached therein indicate that both referral to that agency and constitutional attack would be of no avail to the plaintiff.

Agreement, however, on its face refers solely to passenger baggage, and is therefore not applicable to the shipments via air freight.

The plaintiff contended that since jewelry did not constitute "baggage" within the definition thereof contained in the air freight tariff the use of the "baggage airbill" by the defendant's clerk constituted a deviation from the tariff rules. It must be remembered, however, that at no time did Mr. Tishman inform the clerk that the sample cases contained other than baggage, nor that their contents were of a class required to be described specifically. For that reason, no deviation occurred with respect to the use of the defendant's "baggage airbill". Mr. Tishman was neither a *victim* nor a *beneficiary of* deviation or discrimination.

The plaintiff further contended that Rule 3.2(c) and Rule 3.2(b) of its tariff were contradictory and that they should therefore be read in a light least favorable to their author. Rule 3.2(c), set out in full at note 2, exempted the defendant from liability unless articles carried were described in full on the airbill. Rule 3.2(b) provided:

"The carrier shall not be liable for loss, damage, deterioration, destruction, theft, pilferage, delay, default, misdelivery, non-delivery, or *any other* result not caused by the actual negligence of itself, its agent, servant or representative, acting within the scope of their authority, or not occurring on its own line or in its own service, or for any act, default, negligence, failure or omission of *any other* transportation organization, provided that, upon proof by the shipper that the shipment was received by the carrier in an undamaged, disease-free and proper shipping condition, and was lost, damaged, deteriorated, destroyed, stolen, pilfered, delayed, misdelivered or not delivered, while in carrier's possession, carrier shall have the burden of proving that such loss, damage, deterioration, destruction, theft, pilferage, delay, misdelivery or non-de-

livery was not the result of its negligence."

It is a familiar principle of legal construction that the specific provisions of a contract are to be given preference over the general provisions, and if there is a conflict between the two any reconciliation should give full effect to the more specific. Section 3.2(c) provided that the carrier is exempted from liability for loss in any case where the item lost is not specifically described on the airbill. Rule 3.2(b) was a general provision which provided for the allocation of burden of proof. In order for 3.2(b) to have had any effect at all, there must first have existed some liability for loss. If the carrier could not sustain its burden under 3.2(b), then it would be subject to liability for loss as provided for in the other rules of the tariff. Rule 4.3(1), supra, for example, would limit the carrier's liability to $0.50 per pound or $50.00, whichever is more, unless a higher value is declared. To read these provisions otherwise would be contrary to the holdings of *Lichten* and *Vogelsang*, supra as well as to the dictates of common sense.

The plaintiff next contended that the defendant, its servants, agents or employees were guilty of gross negligence or conversion, and that therefore, the defendant cannot take advantage of the tariff provisions.

Proof of delivery to the carrier and failure to return constitute a technical conversion. The evidence has established such a conversion. However, in order to relieve the defendant of its tariff protection, it is necessary for the plaintiff to prove more than mere technical conversion which has amounted perhaps to no more than negligence. Even gross negligence or proof that an employee of the defendant actually stole the jewelry would not suffice to render the tariff inapplicable. In Glickfeld v. Howard Van Lines, 213 F.2d 723 (9th Cir. 1954), the plaintiff contended that conversion by the carrier deprived it of

the benefit of its tariff. The court said, at page 727:

> "The litigants agree that if the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct. However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i. e., where the carrier has appropriated the property for its own use or gain. *The carrier may properly limit its liability where the conversion is by third parties or even by its own employees.* In the latter circumstance, where the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct." (emphasis added)

The plaintiff presented no evidence of conversion by the defendant itself for its own use of the lost jewelry.

 Finally, the plaintiff contended that the defendant was a common carrier by air and subject to a common carrier's liability as insurer of goods; or, failing that, the defendant was a bailee for hire, liable at common law for loss caused by its negligence. It is beyond dispute, however, that with respect to negligent loss of or damage to baggage or freight, contractual arrangements and obligations are governed by the Federal Aviation Act, not by common law or some other statute. Milhizer v. Riddle Airlines, Inc., 185 F. Supp. 110 (E.D.Mich.1960) aff'd, 289 F.2d 933 (6th Cir. 1961); Mack v. Eastern Air Lines, 87 F.Supp. 113 (D. C.Mass.1949). Defendant's tariff provisions cover all aspects of the transaction and occurrence involved herein.

Even if we were to assume that any part of the transaction between the plaintiff and the defendant escaped coverage under the defendant's tariffs, the common law of carriers or bailees would not permit the plaintiff to recover for the loss of its jewelry.

 "At common law a carrier is liable as an insurer for loss to those goods which it holds itself out to handle." J. and H. Flyer, Inc. v. Pennsylvania Railroad Co., 316 F.2d 203 (2d Cir. 1963). The defendant's air freight tariff specifically provided that it would not accept jewelry checked as baggage or enclosed in baggage. The plaintiff, although transporting the sample cases by air freight, received therefor without objection "baggage airbills". The sample cases were checked as baggage but the undisclosed contents, jewelry, were within the class of goods for which the defendant did not hold itself out as a common carrier.

"Bailment is a consensual relation and allowance of recovery, by this plaintiff, would mean holding defendant liable for failure to take precautions with unknown chattels." St. Paul Fire and Marine Insurance Company v. Chicago Union Station Company, 253 F.2d 441, at 443 (7th Cir. 1958). In that case, the court denied recovery for the value of jewelry where the carrier was unaware that it was contained in two cases checked with it by plaintiff but suggested that the defendant could have been held liable for at least the nominal value of the two sample cases *qua cases* (excluding jewelry), but such liability was not asserted there.

See also Magnin v. Dinsmore, 62 N.Y. 35 (1875), where the contract between shipper and carrier provided for limitation of liability to $50.00 unless a higher value was declared, it was held that silence by the shipper as to the true value of the goods shipped relieved the carrier of liability for loss of the goods due to negligence since the carrier was misled as to the degree of care and security it should provide and was deprived of his adequate reward for carriage. Citing Magnin v. Dinsmore, the court in Crosby v. 20 Fifth Avenue Hotel Co., 173 Misc. 604, 17 N.Y.S.2d 498 (App.Tm. 1st D. 1940) held that a hotel was not chargeable as a bailee for a valuable antique left in a trunk, where the plaintiff had not given

the hotel notice that the trunk contained anything but ordinary personal luggage.

Consequently even if common law governed, the defendant would not be liable for loss of plaintiff's jewelry.

Judgment shall be entered accordingly in favor of the plaintiff against the defendant for the sum of $50.00 which represents the minimum liability on the loss of the sample case under the defendant's tariffs. No costs are granted to either party. So ordered.