Joseph **VOGELSANG** and George Schmits, co-partners doing business under the firm name and style of White-house Bros., Plaintiffs-Appellants,

v.

**DELTA AIR LINES, INC.,** Defendant-Appellee.

No. 310, Docket 27108.

United States Court of Appeals Second Circuit.

Argued April 4, 1962.

Decided April 30, 1962.

Simon Greenhill, New York City (Greenhill & Speyer, John M. Speyer, New York City, of counsel) for plaintiffs-appellants.

John L. Conners, New York City (Bigham, Englar, Jones & Houston, John M. Aherne, New York City, of counsel), for defendant-appellee.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Plaintiffs appeal from a judgment of Judge Sugarman in the Southern District of New York, 193 F.Supp. 613, which granted a motion of defendant, Delta Air Lines, Inc., for summary judgment limiting to $100 its liability for loss of a bag owned by plaintiffs and checked in connection with the air transportation of one of them.[1] We affirm.

The facts, contained in affidavits, Delta's answer to interrogatories, and depositions, are as follows:

Plaintiffs are partners, engaged in the sale of loose diamonds and the manufacture of platinum, gold and diamond jewelry for sale to retailers. In the fall of 1957, plaintiff Schmits made a flight from the firm's headquarters in Cincinnati, Ohio, to Jacksonville, Florida, on a Delta plane whose final destination was Miami. His transportation was under a coupon forming part of a round trip interstate ticket previously purchased. He checked two bags. The airline affixed a numbered "strap check" to each bag and gave Schmits "claim stubs," bearing the same numbers, which formed the lower part of the tags. One of the pieces of luggage was a small leather bag containing personal articles; the other was a fibre bag encased in a canvas cover and allegedly containing assorted jewelry worth $69,275.87, intended for display to customers of Schmits' firm.

At the time of Schmits' journey, Delta was a participant in Local and Joint Passenger Rules Tariff No. PR-4 governing the transportation of passengers and baggage between points within the United States,[2] filed with the Civil Aeronautics Board. Rule 71 of the tariff provided, insofar as pertinent, as follows:

"Rule 71—Limitation of Liability

"(A) The liability, if any, of all participating carriers for the loss of,

---

1. The jurisdiction of the District Court was based on diverse citizenship, 28 U.S.C. § 1332.

 In the District Court, Delta also claimed complete exemption under Rule 70(B) of its tariff, which disclaimed liability "for the loss of, injury to, or delay in the delivery of personal property which is not acceptable for transportation pursuant to Rule 65 (Acceptance of Baggage)." Rule 65 limited the carrier's ac-ceptance obligation to "such personal property as is necessary or appropriate for the wear, use, comfort, or convenience of the passenger for the purposes of his trip." Judge Sugarman overruled this claim; Delta has withdrawn its appeal from his ruling.

2. The tariff also applied between points in the Continental United States and points in Canada, and between points in Canada.

damage to, or delay in the delivery of any personal property, including baggage (whether or not such property has been checked or otherwise delivered into the custody of the carrier) shall be limited to an amount equal to the value of such property, which shall not exceed the following amounts for each ticket:

\* \* \* \* \* \*

$100.00 when any other carrier [including Delta] is responsible for the loss, damage or delay \* \* \*;

\* \* \* \* \* \*

unless the passenger, at the time of presenting such property for transportation, when checking in for flight, has declared a higher value and paid an additional transportation charge, at the rate of 10 cents for each $100.00 or fraction thereof, by which such higher declared value exceeds the applicable amount set forth above, in which event carrier's liability shall not exceed such higher declared value." [3]

The ticket issued to Schmits contained, under the heading "Conditions of Contract," a provision under (4) that:

"(d) liability of Carrier in respect of baggage and other personal property is limited to its declared value which shall not exceed $100 (U. S. currency) or its equivalent per passenger, unless a higher valuation is declared in advance and additional charges are paid pursuant to Carrier's tariffs;"

and another provision

"(5.) Baggage carried hereunder will be delivered to the bearer hereof upon return to Carrier of the baggage (claim) tag(s)."

Schmits did not avail himself of the option to declare a higher value than $100 and pay the corresponding charges, which, for the value now claimed, would have considerably exceeded his fare for this leg of the trip.

On arriving at Jacksonville, Schmits went to a self-claim baggage area in the terminal. When the truck with luggage from his flight arrived, Schmits saw, and received, the leather bag containing personal effects; the canvas-covered bag with the jewelry was not on the truck and has never been located. Investigation revealed that as the plane was being unloaded on the ramp, a man holding a claim check approached the porter who was receiving baggage from the bin in the belly of the plane, and asked for his bag; the porter declined to search for it. The man then made a similar request of another employee, who, having finished his task of unloading the mail bin in the tail of the plane, had joined the porter in receiving baggage. The man gave this employee a claim tag; the latter handed the tag to the porter; the man took a bag, presumably Schmits', and departed; no one ever looked at the proffered claim tag. Although Delta's internal rules required surrender of the claim tag and prohibited ramp delivery, both requirements were occasionally breached when passengers sought quick delivery of baggage to assist in making connections.

■ Section 403(a) of the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 483 (a), then in effect [now § 403(a) of the Federal Aviation Act of 1958, 49 U.S. C.A. § 1373(a)], obliged Delta to file with the Civil Aeronautics Board "tariffs showing all rates, fares, and charges for air transportation between points served by it \* \* \* and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation." The Board required, 14 C.F.R. § 221.38(a), that "the rules and regulations of each tariff shall contain" *inter alia:*

"(4) All other provisions and charges which in any way increase or decrease the amount to be paid on any shipment or by any passenger or by any charterer or which in any way increase or decrease the value

---

3. Certain other airlines accepted basic liability of $250.

of the services rendered to the shipment or passenger or charterer." [4]

A provision limiting liability for baggage unless a higher valuation is declared and higher charges paid is within this requirement. Cf. Herman v. Northwest Airlines, Inc., 222 F.2d 326 (2 Cir.), cert. denied 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751 (1955).

■ A long line of decisions, too familiar to warrant complete citation, has settled that limitations of liability in railroad tariffs required to be filed with the Interstate Commerce Commission are binding on shippers and passengers, whether the limitation was also embodied in the transportation documents, as in Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), or was not, as in Boston & Maine R. R. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914). In Western Union Telegraph Co. v. Esteve Brothers & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921), the principle was extended to tariff provisions of a telegraph company filed with the Commission, although not then required to be. Inevitably, therefore, the same rule has been applied to tariffs of air carriers filed with the Civil Aeronautics Board under 49 U.S.C.A. § 483(a), Lichten v. Eastern Air Lines, Inc., 189 F.2d 939 (2 Cir., 1951); Herman v. Northwest Airlines, Inc., supra.

■ Plaintiffs contend that what happened here did not constitute "the loss of, damage to, or delay in the delivery of any personal property" within Rule 71 (A). They say the bag was not lost, damaged, or delayed, but misdelivered. We would not read "loss" so narrowly. For all practical purposes a bag is just as much "lost" to the owner when it is delivered to someone else who does not return it, as when it has been misplaced or pilfered. The purpose of Rule 71(A) was to protect the airline directly, and other users of its service indirectly, from large baggage claims of the sort here presented unless the carrier was advised of the need for taking special precautions and adequately paid for their cost and the enlarged responsibility assumed. This forbids a construction, not called for by the words, that would eliminate so common a cause of "loss" as a misdelivery; a true "conversion" by the carrier itself, see Glickfeld v. Howard Van Lines, Inc., 213 F.2d 723, 727 (9 Cir., 1954), would be another matter. The Carmack Amendment, 49 U.S.C.A. § 20(11), making an initial carrier of property liable "for any loss, damage, or injury to such property" caused by a connecting carrier, has always been held to include misdelivery, King v. Barbarin, 249 F. 303, 305 (6 Cir., 1917); Winget v. Grand Trunk Western Ry., 210 Mich. 100, 177 N.W. 273 (1920); and misdelivery comes within the phrase "failure to make delivery" in a bill of lading requiring timely notice of claim in that event, Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). Lichten v. Eastern Air Lines, supra, also is directly in point on the facts, although the argument seems not to have been made in exactly the form in which plaintiffs make it here; there too the tariff spoke of "the loss of, or any damage to, or any delay in the delivery of" articles included in baggage and the bag was delivered to an unknown person without production of the claim tag, 189 F.2d at 940.

■ Plaintiffs appear to argue in the alternative that if the tariff provision applies to conduct which they regard as so reprehensible as Delta's, it was one that the Civil Aeronautics Board could not lawfully accept. They point, by way of analogy, to Article 25(1) of the Warsaw Convention, 49 Stat. 3000, 3020, relating to certain international air carriage, whereby

"The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or lim-

---

4. 49 C.F.R. § 221.38(g) provided that "Where it is desirable or found more practicable, the rules and regulations required by this section may be published in separate governing tariffs * * *."

it his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct."

and argue that Delta's conduct was of the sort there described. The Warsaw Convention, however, does not affect the Board's power to accept tariffs providing other regimes of liability for transportation not coming within it. The Lichten decision is *a fortiori* authority against plaintiffs on this score. There the tariff completely exempted from liability as regards jewelry; the majority held the Board could lawfully accept such a provision, and even the dissenting judge thought that "possibly" Eastern might have provided for limitation of liability for baggage "to a certain, reasonable amount, unless the passenger gave notice of the presence of valuables in his baggage and paid an additional sum for its transportation," 189 F.2d at 945, without suggesting that such a limitation would not be valid if the carrier's misconduct were extreme.

 Indeed, the true thrust of plaintiffs' argument is not that the Board could not lawfully accept a tariff containing Rule 71(A) but rather that it ought not to have done so because the Rule is unreasonable if it covers a case such as this. A claim that a tariff is unreasonable must be passed upon in the first instance by the Board, United States v. Western Pac. R. R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Although, in Continental Charters, Inc., Complaint of Mary Battista, 16 C.A.B. 772 (1953), a court referred such a claim to the Board, which held the notice provision

there in question to be unreasonable, such retrospective invalidation of a tariff properly filed with the Board may well be precluded in the light of the Supreme Court's subsequent decision in T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959).[5] Moreover, nothing has been called to our attention that would give any basis for belief that the Board is dissatisfied with the rule here under attack, and there is much to suggest the contrary. In 1952 the Board dismissed an investigation into liability rules insofar as it concerned a provision similar to Rule 71(A), subject only to a condition that "the carriers will give other notice of the $100 limitation on checked and unchecked baggage * * *," Order E–6538, CCH Aviation Law Reports ¶ 21,501; very recently the Board terminated what remained of the investigation, without prejudice, of course, to any future one, Order E–18195 (April 10, 1962). Also the Board has approved an agreement of the international carriers who are members of the International Air Transport Association adopting Conditions of Contract for the passenger ticket that limit to the Warsaw Convention figures liability for baggage on which a higher valuation has not been declared, without any exception for wilful misconduct so far as concerns transportation not subject to the Convention. Pan American World Airways, Inc., et al., Conditions of Carriage, 24 C.A.B. 575, 579 (1957). In the light of all this we are not disposed to order, of our own motion, a reference to the Board that plaintiffs have not sought either below or here. All other arguments of plaintiffs are disposed of by our Lichten and Herman decisions.

Affirmed.

5. The T. I. M. E. case arose under the Motor Carrier Act, on which, as the Board pointed out in Continental Charters, 16 C.A.B. at 777, the Civil Aeronautics Act was largely patterned. The Board there relied, 16 C.A.B. at 776–777, on Bell Potato Chip Co. v. Aberdeen Truck Line, 43 M.C.C. 337, 341–342 (1944), in which the Interstate Commerce Commission had held that despite the ab-

sence of reparation provisions in the Motor Carrier Act in contrast to Parts I and III of the Interstate Commerce Act, an absence paralleled in the Civil Aeronautics Act, the Commission could nevertheless make an administrative finding of past unlawfulness of a tariff; Bell Potato Chip was later specifically disapproved in T. I. M. E., 359 U.S. at 476–477, 79 S.Ct. at 904, 3 L.Ed.2d 952.