**TISHMAN & LIPP, INC., Plaintiff-Appellant,**

v.

**DELTA AIR LINES, Defendant-Appellee.**

**No. 630, Docket 31936.**

United States Court of Appeals
Second Circuit.

Argued June 10, 1969.

Decided July 31, 1969.

John L. Conners, New York City (Bigham, Englar, Jones & Houston, John V. McAuliffe, New York City, on the brief), for defendant-appellee.

Robert L. Horkitz, New York City (Rein, Mound & Cotton, Samuel A. Berger and Eugene Wollan, New York City, on the brief), for plaintiff-appellant.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Pollack, Judge, dated October 25, 1967, directed for plaintiff-appellant Tishman & Lipp, Inc. in the amount of $50 after a trial to the court and a jury. Tishman & Lipp, Inc. v. Delta Airlines, 275 F.Supp. 471 (S.D.N.Y.1967). We find no error and affirm the judgment.

Appellant's president, Irving Tishman had purchased air transportation which included a trip from New Orleans to New York. On March 19, 1964 Mr. Tishman presented himself at the Delta passenger counter at the New Orleans airport for the purpose of checking his luggage. Mr. Tishman's luggage consisted of an attache case which he carried with him aboard the plane, a suitcase containing personal belongings which he checked as baggage under his free weight allowance of 40 pounds, and two separated sections of his jewelry sample case containing some $80,000 in jewelry. Each of the two sections measured 18 x 18 x 10 inches and was hinged to fit together with the other part and was separately covered entirely with a blue zippered cover. The ticket clerk told Mr. Tishman that there was an excess weight of 60 pounds, the weight of the two sample pieces, and added that he would "put it on airfreight because it was less expensive." The clerk said nothing about priority, and at no time did Mr. Tishman reveal to the clerk what was enclosed in the sample case sections, nor the specific value therefor. Tishman received a claim check entitled "BAGGAGE AIRBILL" which recited "BAGGAGE CHECKED SUBJECT TO AIR FREIGHT TARIFFS INCLUDING LIMITATIONS OF LIABILITY THEREIN CONTAINED." The baggage airbill receipted payment of $10.80 for air freight weighing 60 pounds. Had Mr. Tishman chosen to check the sample cases as excess baggage the cost to him would have been $26.12. After receiving his claim stubs and boarding pass, Tishman said that he would wait until his baggage went down below, adding "It is expensive, and make sure it gets on the plane with me." The clerk replied "Don't worry, I'll take care of it."

On arrival in New York, one of the sample cases was missing from the baggage area and was never found. Mr. Tishman immediately asserted that it contained jewelry worth $50,000, demanded an investigation and ultimately brought this action.

The case was brought to the District Court by removal from the Supreme Court of the State of New York on the ground of diversity of citizenship, jurisdiction was further based on the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq. When plaintiff-appellant rested on the second day of trial, defendant-appellee moved for a directed verdict, then rested on plaintiff's case and renewed its motion. From the bench the Court dismissed the complaint and discharged

the jury. Several days thereafter, the court concluded that plaintiff intended to claim for the sample case as well as the contents thereof, and the court on its own motion reversed its original decision and directed a verdict for plaintiff in the amount of $50, thus granting appellee's alternative motion for a directed verdict.

The District Court's verdict was based upon the tariffs filed by appellee Delta Air Lines with the Civil Aeronautics Board pursuant to 49 U.S.C. § 1373.

Delta's Air Freight Rule No. 2.5(c) [1] states that jewelry is "not acceptable for shipment as baggage and must not be enclosed in baggage." Rule 3.2(c) [2] states that "The carrier shall not be liable for any loss of * * * jewelry, precious stones * * * unless such articles are specifically described on the airbill, provided that carrier shall not be liable in any event for such articles enclosed in or shipped as baggage." Rule 3.3(a) [3] provides that "the value of the shipment shall be determined in accordance with the provisions of Rule 4.3 and that the total liability of the carrier shall in no event exceed the value of the shipment as so determined." Rule 4.3 [4] provides that a shipment shall "be deemed to have a declared value of $0.50 per pound (but not less than $50.00) unless a higher value is declared on the airbill at the time of receipt of the shipment from the shipper." The rule fur-

ther provides for an additional transportation charge of 10 cents per $100 value by which the declared value on the airbill exceeds $0.50 per pound or $50. Finally, Delta's Passenger Tariff Rule No. 70(c) states that it is "not liable for loss * * * in the delivery of * * * jewelry * * * which are included in the passenger's checked baggage, whether with or without the knowledge of carrier."

Read together, Delta's rules provide that jewelry is not acceptable for shipment as baggage, and that as carrier it is not liable for jewelry shipped as baggage. It will assume liability for jewelry not so shipped or enclosed providing it is specifically described on the airbill, and an additional transportation charge is paid at the rate of 10 cents for each $100 by which the declared value exceeds $0.50 per pound or $50, whichever is higher.

Tariffs filed with the Civil Aeronautics Board if valid, are conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby. Slick Airways, Inc. v. United States, 292 F.2d 515, 154 Ct.Cl. 417 (1961); Lichten v. Eastern Air Lines, Inc., 189 F.2d 939, 25 A.L.R.2d 1337 (2d Cir. 1951), 49 U.S.C. § 1373. Limitations of liability in tariffs required to be filed by air carriers with the Civil Aeronautics Board are

---

1. Air Freight Tariff Rule No. 2.5(c)
   Money, jewelry, negotiable paper and like valuables, liquids, fragile or perishable articles are not acceptable for shipment, as baggage and must not be enclosed in baggage.

2. Air Freight Tariff Rule No. 3.2
   (c) The carrier shall not be liable for any loss of money, bullion, bonds, coupons, jewelry, precious stones, valuable papers or other articles of extraordinary value unless such articles are specifically described on the airbill, provided that carrier shall not be liable in any event for such articles enclosed in or shipped as baggage.

3. Air Freight Tariff Rule No. 3.3
   (a) In consideration of carrier's rate for the transportation of any shipment,

which rate, in part, is dependent upon the value of the shipment as determined pursuant to Rule 4.3, the shipper and all other parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of Rule 4.3 and that the total liability of the carrier shall in no event exceed the value of the shipment so determined.

4. Air Freight Tariff Rule No. 4.3
   (a) 1. A shipment shall be deemed to have a declared value of $0.50 per pound (but not less than $50.00) unless a higher value is declared on the airbill at the time of receipt of the shipment from the shipper.

binding on passengers and shippers whether or not the limitations are embodied in the transportation documents. Vogelsang v. Delta Air Lines, Inc., 302 F.2d 709 (2d Cir. 1962), cert. denied 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962) ; cf. Herman v. Northwest Airlines, Inc., 222 F.2d 326 (2d Cir.), cert. denied 350 U.S. 843, 76 S.Ct. 84, 100 L. Ed. 751 (1955).

Appellant claims that no evidence supports the District Court's finding that Tishman elected to have his luggage transported as air freight baggage rather than as excess passenger baggage. Mr. Tishman's testimony refutes this claim.[5] From his testimony, it is clear that appellant cannot sustain its contention that Tishman had no understanding sufficient to form an election.

Appellant cites Vogelsang v. Delta Air Lines, Inc., 193 F.Supp. 613 (S.D.N.Y. 1961), aff'd 302 F.2d 709 (2d Cir. 1962) in support of the proposition that the very passenger tariff involved in the case at bar has been held to apply to a jewelry sample case. In *Vogelsang*, however, Judge Sugarman noted that if Delta intended to exclude jewelry for transportation as baggage, it did not say so in the tariff provision then effective. In the present case, Rule 70(c) explicitly states that Delta is not liable "for loss, damage to, or delay in the delivery of * * * jewelry * * * which are included in the passenger's checked baggage, whether with or without the knowledge of carrier."

Furthermore, even if appellant's contention had merit, appellant would be subject to the limitation of liability rules. Rule 71 of the Passenger Tariff limits Delta's liability for checked baggage to $250 unless the passenger has declared a higher value.

The District Court was correct, however, in holding that since jewelry is not acceptable for shipment as baggage under tariff rule 2.5, the loss in the present case was subject to the limitations in the Air Freight Tariff Rules, which provide for no liability for loss of jewelry in Rule 3.2(c), and which limit the liability for loss of the sample case

5. Q. You handed your passenger ticket in to the Delta Air Line man?
A. Yes, sir.
Q. And in addition to that he gave you a ticket for excess baggage, did he not?
A. Yes. (86)
* * * * *
Q. And this printed form reads, "Delta Air Lines, Inc., baggage air bill." * * * (87) Did you look at them? (88)
A. Surely, when I opened it up, when he handed it to me to make sure I had a receipt.
Q. You had no difficulty in reading what is printed on here, did you?
A. No.
* * * * *
Q. Then there were these words, "Baggage checked subject to air freight tariffs, including limitations of liability therein contained, nonnegotiable claim stub." Did you ever read those words?
A. This is the first time I ever read one of those. (89)
* * * * *
Q. I thought you testified in answer to questions by Mr. Connors that you knew that air freight was available and that it was cheaper?

A. Oh, I did know it. But I am saying in this particular instance he had suggested it to me. * * * I would have taken it anyway. I mean, if I could get it, providing I don't have any problems as far as the baggage, which I specified to him. (90)
* * * * *
Q. And you wanted knowingly to avail yourself of the cheapest type of transportation that Delta could give you; if that was air freight, you were willing to take it ; is that correct?
A. Well, I don't know if it is the cheapest, but I say it was less expensive than the others. (71)
* * * * *
Q. It was no surprise then, Mr. Tishman, to you, when your sample sections were treated and charged for as air freight by the carrier?
A. A surprise to me?
Q. Yes.
A. No.
Q. This is what you wanted, wasn't it?
A. Yes. (72)

to its declared value (Rule 3.3(c)), which under Rule 4.3(a) is deemed to be $0.50 per pound but not less than $50 unless a higher value is declared. See Vogelsang v. Delta Air Lines, Inc., *supra*, at 193 F.Supp. 614–615.

Appellant's next argument is that Delta, by charging Tishman the rate for air freight for his sample case, checked as baggage and given the 40 pound free weight allowance of the passenger tariff, intentionally flouted its filed tariff provisions, and should therefore be estopped from relying on the limitation of liability provisions.

A similar contention was rejected by this court in Lichten v. Eastern Air Lines, 189 F.2d 939, 25 A.L.R.2d 1337 (2d Cir. 1951).[6] This contention also assumes that there was a violation of Delta's tariff rules, which is not the case. The rules do not prohibit Delta from offering to ship baggage at air freight rates. Rule 2.3 provides that "all property is acceptable for transportation" except as otherwise provided by the applicable tariffs or laws.

■ Appellant maintains that the tariff provisions relied upon by Delta are inconsistent and confusing and for this reason none of them can be given effect. Appellant points to Rule 70(c) which denies any liability for jewelry and compares it with Rule 71 which limits liability to $250 unless a higher value is declared. There is no inconsistency.

Rule 71 limits liability, *if any*, to the lesser of $250 or the declared value. However, since appellant's claim is based upon loss of jewelry, that claim comes within Rule 70 which provides that Delta is *not liable* for the loss of jewelry included in the passenger's checked baggage. The limitation of liability provision therefore does not come into play, since there is no liability at the outset. Rule 70 alone governs the jewelry claim, and there is no contradiction.

Appellant claims that the tariff rules relied upon by Delta have been found unlawful by the Civil Aeronautics Board and that this court should either take notice of those decisions or else direct the District Court to refer the issue to the Civil Aeronautics Board. There are several difficulties with this argument.

First, the tariffs involved in the present case were filed with the Civil Aeronautics Board and not objected to, and therefore constitute the contract of carriage between the parties. Lichten v. Eastern Air Lines, Inc., *supra*; 49 U.S.C. § 1373. Appellant's reliance on Pan Am. World Airways et al., Conditions of Carriage, Order No. E–8543, 24 C.A.B. 580 (August 5, 1954) is misplaced. The Civil Aeronautics Board did not announce there that a denial of any liability for jewelry would be invalid, but merely held that the disclaimer should not be so broad as to include items traditionally considered as personal baggage.[7]

6. "The appellant argues, however, that even though the rule is valid it is made inapplicable by the over-carriage of the bag containing the jewelry. This deviation, she insists, constituted a breach of the contract so fundamental that it deprived the carrier of the benefit of the exculpatory provisions of the tariff. The argument rests on an analogy to admiralty cases of which The Sarnia, 2 Cir., 278 F. 459, is typical. It overlooks, however, *the far-reaching effect of the principle of uniformity of treatment, which requires that the tariff be applied to all matters arising from the attempted performance of the contract*. Misdelivery is not a conversion which deprives a carrier of the benefit of a tariff provision

limiting liability. Missouri Pac. R.R. v. Boone, 270 U.S. 466, 46 S.Ct. 341, 70 L. Ed. 688; Georgia, Fla. & Atlanta Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948." 189 F.2d at 942 [emphasis added].

7. "Article 18(8) disclaims liability for loss, damage, or delay in the delivery of fragile or perishable articles, money, jewelry, silverware, negotiable papers, securities, or other valuables, business documents, or samples which are included in the passengers' checked baggage, whether with or without the knowledge of the carrier. Many of the items listed, in reasonable amounts, are ordinarily such as are generally carried by travelers and classified as baggage. As to such items, there ap-

Subsequent to the events in the present case, the Civil Aeronautics Board did rule that airlines could not thereafter refuse to accept jewelry for shipment as baggage, and that they could limit their liability therefor to $500; as to jewelry not shipped as baggage, an airline must accept the passenger's or shipper's declaration of value above $500 as sufficient to require extra coverage. Baggage Liability Rules Case, C.A.B. Docket No. 15529, C.A.B. Order No. E–24198 (Sept. 19, 1966). Even before the Civil Aeronautics Board decision, the Delta tariff rules provided for excess coverage of jewelry where value was declared, Rules 3.3(a) and 4.-3(a). They conflicted with the Civil Aeronautics Board's subsequent ruling in the *Baggage Liability Rules Case* only in that jewelry was not at the time acceptable for shipment as baggage, and that the baggage limitation of liability was $250.

The *Baggage Liability Rules Case* does not affect the result in the present case. Delta here did not refuse to carry Tishman's jewelry as baggage; instead, Tishman elected to have it carried as air freight. With respect to jewelry not checked as baggage, the Civil Aeronautics Board only ruled that the carrier must accept a declaration of value in excess of the carrier's limitation of liability. See 275 F.Supp. 478. In the present case, however, there was no declaration of value by Tishman, nor any indication of what the sample cases contained.

■ We decline to refer the issue of reasonableness of such tariff rules to the Civil Aeronautics Board, cf. Vogelsang v. Delta Air Lines, Inc., *supra* at 302 F.2d 713.[8]

Appellant's final point is that appellee Delta Air Lines was at least a bailee of the jewelry, and therefore subject to the common law rule that a carrier is liable as an insurer for goods which it holds itself out to handle, and that as a bailee, Delta had to explain its failure to return the sample case and to show that it used due care.

■ However, even if common law bailment principles were held applicable, in spite of the Act and the tariff provisions, bailment is a consensual relation and Delta did not agree to enter into it. Delta specifically provided that it would not accept jewelry checked as baggage or enclosed in baggage. Cf. St. Paul Fire & Marine Ins. Co. v. Chicago Union Sta. Co., 253 F.2d 441, 443 (7th Cir.), cert. denied 358 U.S. 830, 79 S.Ct. 49, 3 L.Ed.2d 68 (1958): "Bailment is a consensual relation and allowance of recovery, by this plaintiff, would mean holding defendant liable for failure to take precautions with unknown chattels." Here Tishman was silent not only as to the nature of the goods to be carried but also as to their value. Had Tishman openly declared that his sample case contained jewelry and that he wished to be

---

pears to be no basis for a special limitation of liability. In those specific instances where there might be grounds for a special limitation of liability because the items did not fall within what is generally considered to be baggage, it would appear that such limitation should apply only in those cases where the failure of the carrier to use due care under the circumstances was not a concurring cause of the liability which is sought to be limited." 24 C.A.B. at 586.

8. "A claim that a tariff is unreasonable must be passed upon in the first instance by the Board, United States v. Western Pac. R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Although, in Continental Charters, Inc., Complaint of Mary Battista, 16 C.A.B. 772 (1953), a court referred such a claim to the Board, which held the notice provision there in question to be unreasonable, such retrospective invalidation of a tariff properly filed with the Board may well be precluded in the light of the Supreme Court's subsequent decision in T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). Moreover, nothing has been called to our attention that would give any basis for belief that the Board is dissatisfied with the rule here under attack, and there is much to suggest the contrary" [citations omitted].

protected against loss or damage thereof, he could have full recovery provided he was willing to have the fact noted on his airbill and pay the excess value charges of $75 based on Delta's assumption of full liability.

The result is not inequitable, for Tishman, by failing to put the air carrier on notice of the nature of the baggage contents not only took advantage of the lower air freight rate, as was his custom, but deprived the carrier of the opportunity to take the extra precautions the safety of such valuable cargo required, preferring to rely on his own ability to keep an eye out for the baggage as it left for the plane. It is only just that the loss should fall on the one who with knowledge of the value involved, chose to take the chance.

The judgment is affirmed.