**Larry E. RANDALL, Plaintiff,**

**v.**

**FRONTIER AIRLINES, INC., and American Airlines, Inc., Defendants.**

**No. FS-75-31-C.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

July 21, 1975.

G. Alan Wooten, of Harper, Young & Smith, Ft. Smith, Ark., for plaintiff.

Joseph E. Kilpatrick, Jr., of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for Frontier Airlines.

Douglas O. Smith, Jr., of Warner & Smith, Ft. Smith, Ark., for American Airlines.

## OPINION

JOHN E. MILLER, Senior District Judge.

There are cross motions for summary judgment before the court, one by American Airlines, filed May 1, 1975; one filed by Frontier Airlines on May 16, 1975; and one by plaintiff, Larry E. Randall, filed June 4, 1975.

The suit was commenced by plaintiff on March 3, 1975, against both defendants seeking to recover $3,500.00, the alleged value of a gun case and its contents allegedly lost by defendants while being transported as baggage on a trip by air from Fort Smith, Arkansas, to Mexico City, Mexico.

Plaintiff is a citizen and resident of Fort Smith, Arkansas. Defendant Frontier Airlines is a corporation incorporated under the laws of the State of Nevada with a place of business in Fort Smith, Arkansas. Defendant American Airlines is a corporation incorporated under the laws of the State of Delaware with a place of business in Little Rock, Arkansas.

Both defendants are for-hire interstate air carriers operating within the State of Arkansas pursuant to a Certificate of Public Convenience and Necessity issued to each of them in accordance with the Civil Aeronautics Act.

Under the provisions of 28 U.S.C.A., § 1337, the court has jurisdiction of the parties and the subject matter, and no minimum amount in controversy is required.

In his complaint the plaintiff has alleged that on February 28, 1974, pursuant to a previously purchased ticket, he traveled to Mexico City, Mexico, via Frontier Flight No. 541 from Fort Smith, Arkansas, to Dallas, Texas, and via American Flight No. 448 from Dallas, Texas, to Mexico City, Mexico. The ticket which he purchased at Fort Smith from Frontier, among other things, entitled him to arrive in Mexico City with his luggage intact. Prior to beginning his flight from Fort Smith, plaintiff advised the agent of Frontier that he desired to carry on board, as hand luggage, a leather fitted shotgun case containing a Browning, Superposed, Pointer Grade shotgun, Serial No. 83188, with two sets of barrels, four custom made chokes, a custom stock, a detachable forearm, a recoil reducer with installation, hy-wide prescription shooting glasses and prescription molded ear protectors. He further alleged that he advised the agent of Frontier of these

facts and that the contents of his luggage were quite valuable. The agent refused to allow plaintiff to carry the case and its contents onto the aircraft, but instead required that same be checked as baggage and marked it with a sign indicating that the case contained firearms. The case and contents were checked as regular baggage to Mexico City. Upon arrival in Mexico City plaintiff presented his baggage check for the aforementioned gun case and its contents, and the defendant American failed and refused to deliver the same and its contents; that the loss of the gun case and its contents was a direct result of the negligence of the defendants, acting singularly and concurrently, and for which both defendants are liable, jointly and severally. It is further alleged that the gun case and its contents at the time of its loss had a value of $3,500.00 and that plaintiff has been damaged in said sum and should be compensated therefor.

On April 17, 1975, defendant Frontier filed its answer in which it denied the material allegations of the complaint, together with a cross complaint in which it alleged that if plaintiff suffered damages, that said damages were the direct and proximate result of negligence on the part of American. It asked that the complaint of plaintiff be dismissed, and in the alternative for indemnity or contribution against its co-defendant, American.

On May 16, 1975, Frontier filed an amended answer in which it alleged:

"2.

"Defendant Frontier Airlines, Inc. states that the flight for which the plaintiff herein purchased a ticket was an international flight originating in Fort Smith, Arkansas, and terminating in Mexico City, Mexico, and that the baggage referred to in plaintiff's Complaint, which was checked in connection with said flight, was controlled by the existing tariff for inter-national flights, to-wit, CAB No. 20, issued by Air Traffic Corporation, Agent, International Passenger Rules, Tariff PR–2, and that such tariff limited the liability and responsibility of this defendant to a maximum of Twenty Dollars ($20.00) per kilogram for checked pieces of baggage, and therefore the liability of this defendant, if any, to this plaintiff is limited to said amount.

"3.

"In the alternative, if this defendant's liability is not limited by International Passenger Rules Tariff No. PR–2, its liability is limited by Local and Joint Passenger Rule Tariff No. PR–6, CAB No. 142, Rule No. 370 which limits liability to Five Hundred Dollars ($500.00) per fare-paying passenger."

It also filed a motion for summary judgment in accordance with the allegations in its amended answer.

On April 18, 1975, defendant American filed its separate answer, in which it denied the material allegations contained in the complaint, and alleged:

"VI

"This defendant further pleads that the flight for which plaintiff herein purchased a ticket was an international flight originating in Fort Smith, Arkansas, and terminating in Mexico City, Mexico, and that the baggage referred to in plaintiff's complaint, which was checked in connection with said flight, was controlled by the existing tariff for international flights, to-wit, CAB No. 20, issued by Air Traffic Corporation, Agent, International Passenger Rules, Tariff PR 2, and that such tariff limited the liability and responsibility of this defendant to a maximum of $20.00 per kilogram for checked pieces of baggage, and therefore the liability of this defendant, if any, to this plaintiff is limited to said amount.

**"VII**

"Pleading further, this defendant specifically denies that it has been guilty of any acts of negligence, omission or commission, and does further plead, in defense to the complaint of the plaintiff, assumption of the risk, contributory negligence, comparative negligence, and unavoidable casualty as a complete and/or partial defense.

**"VIII**

"Further, this defendant pleads that if and in the event the plaintiff was damaged as alleged in his complaint, said damage was caused and occasioned by third persons, firms or corporations for which this defendant is in no way liable or responsible.

**"IX**

"Pleading further, this defendant specifically reserves the right to plead further herein by way of amendment to its answer, cross complaint or otherwise."

It also filed a reply to the cross complaint of defendant Frontier.

On May 1, 1975, American filed its motion for summary judgment, in which it alleged that there is no genuine issue as to any material fact, and further stated:

" * * * that at the time of said flight the International Passenger Rules Tariff No. PR–2, C.A.B. No. 20, which was in effect and applicable to American Airlines, Inc., on February 28, 1974, is attached as Exhibit 'A'. This tariff provides that under Rule 16(C)(5) the liability of this defendant is limited to $20.00 U.S. currency per kilogram (or $9.07 per pound) in case of checked baggage. In this instance the baggage involved was checked, and it is agreed by counsel the baggage weighed thirty (30) pounds. This movant, defendant herein, has previously tendered to plaintiff the sum of $272.10, representing the maximum amount due under said tariff as aforesaid, and does herewith retender said amount."

On June 2, 1975, the parties filed a stipulation of facts in which it was stipulated that plaintiff was a fare-paying passenger on the international flight heretofore described; that prior to boarding Frontier Flight No. 541 at Fort Smith, he checked a piece of baggage for the through flight and redelivery to him in Mexico City; that the baggage consisted of the articles heretofore described in the pleadings. It is further stipulated "that upon arrival in Mexico City, Mexico, the baggage above described was not redelivered to plaintiff * * * and that the baggage above referred to was apparently lost or otherwise mislaid after delivery of same to American Airlines by Frontier Airlines, Inc."; and that it was of the weight of thirty pounds.

On June 4, 1975, the plaintiff filed his motion for summary judgment and prayed "that the Court will grant his motion for summary judgment on the merits in accordance with Rule 56, Federal Rules of Civil Procedure and for all other proper relief."

Since the parties stipulated that the baggage was apparently lost or otherwise mislaid after delivery to American by Frontier, the court is only considering the cross motions of plaintiff and defendant American for summary judgment.

The attorneys for plaintiff and defendant American have served and filed extensive and thorough briefs on the questions involved herein.

Defendant American in its brief served May 1, 1975, in support of its motion for summary judgment states and contends that it is undisputed that the checked baggage weighed 30 pounds and that no higher value was declared or additional charges paid in connection therewith.

The applicable International Passenger Rule heretofore referred to provides in Rule 16(C)(5):

"(5) Any liability of Carrier is limited to 250 French Gold Francs, $20.00 U.S. currency or approximately $20.00 Canadian currency, per kilogram in the case of checked baggage, and 5,000 French Gold Francs, $400.00 of U.S. currency, or approximately $400.00 Canadian currency, per passenger in the case of unchecked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to Carrier's tariff. In that event, the liability of Carrier shall be limited to such higher declared value. In no case shall the Carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss."

American contends that all it owes plaintiff is the amount heretofore tendered, $272.10, and cites in support of its contention 8 Am.Jur.2d, Aviation, § 46; *Lichten v. Eastern Airlines, Inc.*, (2 Cir. 1951) 189 F.2d 939; *Mao v. Eastern Air Lines, Inc.*, (S.D.N.Y.1970) 310 F.Supp. 844; *Blair v. Delta Air Lines, Inc.*, (S.D.Fla.1972) 344 F.Supp. 360.

In an affidavit executed by plaintiff, he states that he advised the agent of Frontier of the value of the gun case and contents and that he desired to carry it on board, but was told that he would have to check the case and contents as baggage. He further states in his affidavit:

"On previous trips I had been allowed to carry the shot gun case and contents on board and deliver the same to the cockpit area of the aircraft. Without advising me of any applicable tariffs or restrictions on recovery in the event of loss, said agent of Frontier took the case and its contents and marked the same with a large orange sign indicating it was a firearm."

The plaintiff on his brief served and filed June 4, 1975, contends:

"The circumstances as set forth in plaintiff's affidavit clearly reflect that plaintiff was not informed of the existence of the tariff, was in fact required to check the shotgun and related items, and that the same was negligently handled by the defendant airlines in that a large orange sticker was placed on the outside of the case reflecting that the same was a firearm and that if proper care would have been taken of this baggage, it would have completed its destination to Mexico City, Mexico along with the plaintiff. Although defendants state in their briefs that no higher value was declared, the affidavit of Randall clearly reflects that the agent of Frontier was aware that the contents of the shotgun case were valuable, were firearms and that plaintiff did not desire to check the same as baggage and that the limitations of the tariff were not communicated to Randall."

The plaintiff in his original brief cites and relies upon the cases of *Rhoades, Inc., v. United Air Lines*, (3 Cir. 1965) 340 F.2d 481; *Chandler v. Aero Mayflower Transit Co.*, (4 CAA, 1967) 374 F.2d 129; and *Sommer Corp. v. Panama Canal Co.*, (5 Cir. CAA, 1973) 475 F.2d 292, and asks the court to review the cases cited by the defendants in their brief. Plaintiff then cites certain other cases which he contends support this contention that plaintiff was not bound by the provisions of the tariff under which the luggage was checked. He attached to his brief a copy of the opinion in the case of *Muelder v. Western Greyhound Lines*, 8 Cal. App.3d 319, 87 Cal.Rptr. 297, 1970.

■ In the consideration of the contentions of the parties, it is customary for the court to discuss the authorities cited by each party in support of his contentions, but in the instant case nothing would be gained by a discussion of the various authorities submitted by the parties, and the court will not analyze or undertake to distinguish the issue in

each of the cases cited. Suffice it to say that the agent of Frontier who checked the baggage had reason to believe that it was valuable, and did not advise plaintiff that in order to collect for the full value of the baggage in the event of loss that it was necessary to designate the value of the baggage and pay extra charges for the transportation of the baggage. The facts do not show that plaintiff knew that he was required to place a value on the checked article. There is little doubt that had he been advised he would have paid extra for the transportation of the gun case and its contents. Evidently plaintiff was disappointed when he was advised he could not carry the case and its contents as hand baggage, and no further discussion of value occurred. The plaintiff is a business man who was at that time thinking only of being present at the shooting contest. It did not occur to him that his baggage would be stolen or lost.

Title 49 U.S.C.A. § 1373 provides that every air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established. Tariffs shall be filed, posted and published in such form and manner and shall contain such information. The statute further provides that no air carrier shall charge or demand or collect or receive a greater or less or different compensation for air transportation, or for any service in connection therewith than the rates, fares and charges specified in its currently effective tariffs; and no air carrier shall in any manner or by any devise directly or indirectly, or through any agent or broker refund or remit any portion of the rates, fares or charges so specified.

Section 1374 of 49 U.S.C.A. provides that it shall be the duty of every air car-rier to provide and furnish interstate transportation as authorized by its certificate upon reasonable request therefor, and to provide reasonably thorough service in such air transportation in connection with other air carriers.

The baggage check issued to plaintiff was not introduced in evidence, and did not provide for the payment of any extra charges for the transportation of the baggage other than provided by the tariff.

The courts have the right to deal with tariffs only as a matter of reading the language thereof in its context and in relation to whatever other elements in the particular situation it is possible to accord significance to as a matter of law. Any other aspect of carrier charge or tariff application must under the statute be treated as a transportation matter within the authority of the Commission. *United States v. Kansas City So. R. Co.*, (8 Cir. 1954) 217 F.2d 763. See, also, *Chicago & N. W. R. Co. v. Union Packing Co.*, (8 Cir. 1975) 514 F.2d 30.

Title 44 U.S.C.A. § 1505 provides that proclamations and executive orders, documents having general applicability and legal effect, required to be published by Congress, shall be published in the Federal Register.

In *Hycel, Inc., v. American Airlines, Inc.*, (S.D.Tex.1971) 328 F.Supp. 190, the court at page 192 said:

"There can be little doubt as to the controlling effect of the tariff upon the rights of the parties. By the terms of § 403(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1373(a), all air carriers are required to file with the Civil Aeronautics Board tariffs showing, among other things, the rules and regulations in connection with air transportation. Once the carrier has filed its tariff, it becomes an integral part of the contract between the carrier and the shipper or the passenger as the case

may be. This is so even though the passenger or shipper may be unaware of the provisions of the tariff. *Lichten v. Eastern Airlines*, 189 F.2d 939 (2nd Cir. 1951). See also *Vogelsang v. Delta Air Lines*, 302 F.2d 709 (2nd Cir. 1962). In *Tishman & Lipp v. Delta Air Lines*, 413 F.2d 1401 (2nd Cir. 1969), the court noted:

" 'Tariffs filed with the Civil Aeronautics Board if valid, are conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby. * * * Limitations of liability in tariffs required to be filed by air carriers with the Civil Aeronautics Board are binding on passengers and shippers whether or not the limitations are embodied in the transportation documents.' 413 F.2d 1403–1404.

The provision in question here is not invalidated by the fact of it being at odds with the common law rule. The power to determine the reasonableness of any rate, service, or exculpatory provision found in any tariff on file with the Civil Aeronautics Board has been delegated to that agency rather than to the courts. *Lichten v. Eastern Airlines, supra*."

In *United States v. Messer Oil Corp.*, (W.D.Pa.1975) 391 F.Supp. 557, the court beginning at the bottom of page 561 said:

"It is true that regulations and Executive Orders when duly published have the force of law. See *Wolfson v. United States*, 492 F.2d 1386 (Court of Claims 1974); *Farmer v. Philadelphia Electric Company*, 329 F.2d 3 (3d Cir. 1964).

"This is in accordance with 44 U.S.C. § 1507 providing for publication in the Federal Register, which section reads as follows:

" 'A document required by section 1505(a) of this title to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed with the Office of the Federal Register and a copy made available for public inspection as provided by section 1503 of this title. Unless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, except in cases where notice by publication is insufficient in law, is sufficient to give notice of the contents of the documents to a person subject to or affected by it.' "

■ There is no disputed question of fact in the case and under the undisputed facts plaintiff is not entitled to recover except under the terms of the contract for the transportation of baggage or the sum of $272.10 which the defendant American has tendered.

The motions of plaintiff and Frontier Airlines, Inc., for summary judgment should be denied. The motion of American Airlines, Inc., should be granted. The counterclaim of Frontier Airlines, Inc., against American Airlines, Inc., is moot and should be dismissed.

Judgment is being entered for plaintiff against American Airlines, Inc., today in accordance with the above for the amount tendered, $272.10, and dismissing the complaint of the plaintiff with costs payable by plaintiff.