Gene LOCKS

v.

BRITISH AIRWAYS

v.

Robert HEISS, Chief Inspector, U.S.
Customs Service.

Civ. No. 90–3713.

United States District Court,
E.D. Pennsylvania.

March 13, 1991.

Kirk Wiedemer, Philadelphia, Pa., for
plaintiff.

Bruce McKissock, Philadelphia, Pa., for
British Airways.

David McComb, Philadelphia, Pa., for
U.S. defendant and U.S. agents and offi-
cers.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is the third in a trilogy of cases
brought by plaintiff seeking recovery for
damage done to a sculpture during a cus-
toms inspection. In an earlier opinion, I
dismissed plaintiff's claims in two compan-
ion actions. Those actions were brought
against the United States pursuant to the
Federal Torts Claim Act (FTCA), 28 U.S.C.
§§ 2671 *et seq.*, and against individual cus-
toms officials under authority of *Bivens v.
Six Unknown Federal Narcotics Agents,*
403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971). I held that the FTCA claim was
barred by the FTCA's provision prohibiting
claims arising as a result of "the detention
of any good or merchandise by any officer

of customs." 28 U.S.C. § 2680(c). With respect to the *Bivens* claim I held that, given the broad discretion which customs officials enjoy in conducting border searches, the search which resulted in damage to the sculpture violated neither the Fourth nor Fifth Amendments. British Airways now moves for summary judgment in this third action on the claims brought against it as a result of its role in transporting the sculpture and presenting it to the customs officials for inspection.[1]

### I. *Facts*

A full recitation of events giving rise to the complaint is provided in my earlier opinion granting summary judgment in favor of the customs officials.[2] I will therefore confine myself here to a brief recitation of the events.

On January 21, 1989, plaintiff purchased a metal sculpture, valued at approximately $20,900,[3] from a gallery in England. The sculpture is three metal pails that have been welded together in the shape of a cloverleaf and whose tops are sealed.

On January 22, plaintiff presented the sculpture in a wooden crate to British Airways officials as part of his checked baggage for British Airways Flight 215 leaving for Philadelphia the same day. When he arrived in Philadelphia the crate was not among the off-loaded baggage. British Airways official Kirsten Reinsema advised plaintiff that it was not uncommon for baggage to be delayed and that the crate would probably arrive the next day. Reinsema filled out a British Airways property irregularity report that plaintiff reviewed. Reinsema also gave plaintiff a letter providing certain instructions on procedures relating to lost baggage. Plaintiff

claims that Reinsema also assured him that he would be advised when the crate arrived so that he could come to the airport and personally clear the crate through customs.

The crate arrived the next day, January 23, on Flight 215. Rather than advising plaintiff of the crate's arrival, an unidentified British Airways official[4] presented the crate to customs officials for inspection. The customs officials requested that the British Airways official open the crate. After this was done, the customs officials proceeded visually to inspect the sculpture. The customs officials then noted that the sculpture seemed to be unusually heavy—it was, in fact, filled with sand—and as a result took the sculpture to another room out of the presence of the British Airways official for a more thorough inspection. The sculpture would not fit in the x-ray machine so customs officials, apparently unaware that they were examining a valuable work of art, drilled several small holes in the bottom of the pails. They also peeled back the top of one pail. Having satisfied themselves that the pails did not contain any contraband, the customs officials returned the sculpture to British Airways. The sculpture was re-crated and delivered to plaintiff's home.

Plaintiff did not discover the damage until the next day when he first inspected the sculpture. He then called the customs officials and a British Airways supervisor, Declan Halpin, about the damage. Plaintiff alleges that Halpin agreed to speak to his superiors in New York about the incident and assured plaintiff that somebody from British Airways would be in contact with him. Apparently no British Airways official contacted plaintiff, and on April 18,

---

1. British Airways has also filed a cross-claim naming as third-party defendant Robert Heiss, Chief Inspector of the United States Customs Service.

2. *Gene Locks v. Three Unidentified Customs Service Agents* and *Gene Locks v. United States of America,* 759 F.Supp. 1131 (E.D.Pa.1990).

3. Plaintiff paid $11,000 at the time of purchase but that appears to have been only a downpayment. Locks deposition, 34–40.

4. Formally both Reinsema and the unidentified British Airways official appear to have been employees of Ogden Allied, Inc., a company under contract to British Airways to perform the work of processing off-loaded baggage. At the time of her discussions with plaintiff, Reinsema was dressed in British Airways apparel.

1989—nearly three months after the arrival of the sculpture and the ensuing damage—plaintiff, through counsel, provided written notice to British Airways of the damage. On August 9, 1989, plaintiff initiated this action.

After discovery, defendant British Airways moved for summary judgment contending that it is not liable because (1) the British Airways Passenger Rules Tariff on file with the Department of Transportation prohibits recovery for damage to valuable goods shipped as checked baggage; (2) plaintiff failed to provide timely written notice of damage as required by the Passenger Rules Tariff; and (3) plaintiff failed to provide timely written notice of the damage as required by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, reprinted at 49 U.S.C.App. § 1502 note, commonly known as the Warsaw Convention. Finally, British Airways contends that the Warsaw Convention limits British Airways' liability to $9.07 per pound. Since the sculpture weighed about ten pounds, British Airways contends that it is entitled to partial summary judgment declaring its maximum liability to be $90.70.

## II. *Limitations on claims for damage to valuable items*

Section 403(a) of the Federal Aviation Act requires every foreign air carrier to file its tariffs with the Department of Transportation. 49 U.S.C.App. § 1373(a). Unless rejected by the Department of Transportation, the tariffs are valid and effective. *Tishman & Lipp v. Delta Air Lines*, 413 F.2d 1401 (2d Cir.1969). Moreover, tariff terms are binding provisions of the contract of carriage between the carrier and the passenger, regardless of whether they are expressly mentioned. *Wolf v. Trans World Airlines, Inc.*, 544 F.2d 134, 137 (3d Cir.1976).

Rule 55(c)(9) of the applicable British Airways tariff provides

Carrier is not liable for loss, damage to or delay in the delivery of fragile or perishable articles, money, jewelry, sil-

verware, negotiable papers, securities or other valuables, business documents or samples which are included in the passengers' checked baggage, whether with or without the knowledge of carrier.

Defendant's motion for summary judgment, Exhibit J. Plaintiff contends that since the sculpture is valuable, Rule 55(c)(9) applies to it, barring recovery.

It is undisputed that the sculpture was shipped as checked baggage. The sculpture also is undoubtedly a valuable object. However, it does not appear to be a "valuable" as that term is used in the tariff. A close reading of the grammar and punctuation of the tariff provision suggests that the term "valuables" is to be read in combination with "securities." Thus, to be a "valuable" under the tariff, the damaged good must resemble a security or other financial document. A sculpture is not such a good. Defendant therefore is not entitled to summary judgment pursuant to the tariff.

## III. *Limitation on claims pursuant to the Warsaw Convention*

### A. Timely Notice Requirement

Article 26 of the Warsaw Convention provides:

(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.

(2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within three days from the date of receipt in the case of baggage and seven days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within fourteen days from the date on which the baggage or goods have been placed at his disposal.

(3) *Every complaint must be made in writing* upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

(4) Failing complaint within the times aforesaid, no action shall lie against the carrier, *save in the case of fraud on his part.*

49 U.S.C.App. § 1502 note (emphasis added).

■ Plaintiff's first written notice of damage to British Airways occurred on April 18, 1989. This was well outside the fourteen-day notification period permitted for delayed baggage. Thus plaintiff's written complaint was untimely [5] and precludes recovery, unless British Airways committed fraud.

The Second Circuit has described fraud by the carrier as "any intentional acts by the carrier ... which significantly decrease the likelihood of the shipper's giving notice during the brief period allowed." *Denby v. Seaboard World Airlines, Inc.,* 737 F.2d 172, 183 (1984). In this case, plaintiff claims that Halpin, a British Airways official, promised to respond to the oral complaint that plaintiff registered the day following his receipt of the sculpture, and that no British Airways official ever responded. In response, defendant points out that at the time plaintiff filed the property irregularity report, plaintiff also received a summary of the procedures relevant to lost luggage. That summary stated that notice of any damage must be made in writing within seven days of delivery. While I think it unlikely that on these facts jury would find that British Airways committed fraud, a jury that credited plaintiff's testimony that Halpin promised to respond to plaintiff's complaint might so find, and I cannot conclude that a jury would be un-

reasonable in doing so. As a result, there is a material fact in dispute and defendant cannot be granted summary judgment on the grounds that plaintiff's written notice was untimely.[6]

## B. Damages Limitation

■ Article 22(2) of the Warsaw Convention provides that a carrier's liability for damage to checked baggage "shall be limited to a sum of 250 francs per kilogram" unless the passenger made "a special declaration of the value at delivery and has paid a supplementary sum." By order of the Civil Aeronautics Board the damage limitation has been converted to $9.07 per pound. CAB Order 74–1–16 (January 3, 1974). The carrier cannot avail himself of this damage cap, however, "if the damage is caused by his willful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to willful misconduct." Article 25(1); 49 U.S.C.App. § 1502 note.

Plaintiff relies on the "willful misconduct" exception in seeking to escape the damage cap of Article 22(2). In support of his claim that defendant was guilty of willful misconduct, plaintiff points to Halpin's testimony regarding provisions in the Code of Federal Regulations. In particular, plaintiff points to Halpin's ignorance of 19 C.F.R. § 148.21, which provides in pertinent part:

a) Customs officers shall not open baggage or other containers, nor unlock vehicles or compartments thereof for the purpose of examination, but shall detain them until the owner, his agent, or the

---

**5.** Plaintiff attempts to rely on the property irregularity report which he filled out at the time his sculpture failed to arrive on the first flight as his submission of written notice. However, it was impossible for that report, filled out before the sculpture arrived, to serve as written notice that plaintiff wished to make a claim for *damages* that did not become apparent—indeed, which were not in fact caused—until the following day.

**6.** Summary judgment will also be denied on defendant's claim that the tariff's notice requirement bars this action. The parties have not addressed the relationship between the Warsaw Convention's provisions and the tariff's provi-

sions. However, 49 U.S.C.App. § 1502 provides that "in exercising and performing their powers and duties under this chapter [including the power and duty to approve tariffs], the Board and the Secretary of Transportation shall do so consistently with any obligation assumed by the United States in any treaty, convention, or agreement that may be in force between the United States and any foreign country or countries." Thus, it appears that, although the British Airways tariff requiring timely written notice apparently has no provision waiving such a requirement in cases of fraud, the tariff's notice provision is subject to the Warsaw Convention's fraud exception.

person in charge of any baggage, container, or vehicle opens or refuses to open them.

This provision, though, is irrelevant to the present dispute. By its terms the provision only purports to regulate customs officers; it establishes no limitations on a carrier's authority to present baggage to customs officers on a passenger's behalf. Nor does the regulation require that the party presenting baggage for inspection—whether passenger or agent—remain in the presence of the baggage during an inspection, once having performed the initial task of opening the baggage for examination. Therefore, any claim that defendant British Airways committed willful misconduct premised on an alleged violation of this regulation is unavailing under the facts of the present case.

Finally, plaintiff contends that defendant's failure properly to supervise baggage employees contributed substantially to the misfortune which befell his sculpture. Assuming arguendo that there was a lack of adequate supervision—a point I need not decide—the deficiency was of a nature to constitute at most simple negligence. Defendant has produced no facts that would suggest that British Airways possessed the kind of awareness of a likelihood of probable harm that is necessary to sustain a finding of willful misconduct.[7]

In short, plaintiff has failed to satisfy the burden he shoulders in seeking to avoid the Warsaw Convention's damage cap. Since plaintiff has provided unrebutted testimony that the sculpture weighed approximately ten pounds, he is entitled to damages for baggage of that weight at the prescribed rate, creating a total damages figure of $90.70.

For the foregoing reasons, defendant's motion for partial summary judgment will be granted.

---

**7.** I note that British Airways' practice of clearing late-arriving baggage on a passenger's behalf is apparently the product of sound business concerns. According to Halpin's unchallenged testimony, British Airways' policy is designed to avoid the ill-will and inconvenience that would be generated were passengers required to return to the airport to personally clear late baggage.