ALCO–GRAVURE DIVISION OF PUBLICATIONS CORPORATION, use of Sun Insurance Office, Ltd.,

v.

AMERICAN AIRLINES, INC.

Civ. A. No. 10272.

United States District Court
D. Maryland,
Civil Division.

June 19, 1959.

---

A. B. Makover, Benj. Lipsitz, Hyman K. Cohen, Baltimore, Md., for plaintiff.

Jesse Slingluff, Jr., Joseph H. Young, Piper & Marbury, Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the Alco-Gravure Company sues the defendant American Airlines, Inc., to recover for damage to a large glass screen used in the plaintiff's business. Among other defenses the defendant relies on a provision in its tariff schedule filed with the Civil Aeronautics Board, reading in part—

"Rules And Regulations Part 5— Claims:

"5.1 Claim Procedure

"(a) In case of any claim, except for concealed loss or damage, notice of intent to file must be given in writing to the originating or delivery carrier within 30 days after delivery of the shipment, or, in case of failure to deliver, then within 90 days after the date of acceptance.

"(b) Claims for concealed loss or damage must be reported in writing to the delivering carrier at destination within 15 days after delivery of the shipment, with privilege to the carrier to make inspection of the shipment."

The tariff rules also provided—

" * * * 5.2. Limitation of Actions. No carrier shall be liable in any action brought to enforce a claim unless the applicable provisions of Rule 5.1 have been complied with by the claimant, and unless such action is brought within 2 years after the date written notice is given to the claimant if the carrier has disallowed the claim in whole or in part."

On delivery of the screen packed in a wooden box fully enclosed and fastened, at the terminal station of the defendant in Chicago, it receipted for the package on a signed waybill on which appeared the following: The consignor was the plaintiff and the consignee was also a division of the plaintiff at Baltimore. The date of receipt was July 12, 1956. The declared value of the shipment was $3,500. With respect to the valuation the following appeared on the waybill—

"Agreed and understood to be not more than the value stated in the governing tariffs for each pound on which charges are assessed, unless a higher value is declared and applicable charges paid thereon.

"It is mutually agreed that the goods herein described are accepted in apparent good order (except as noted) for transportation as specified herein, subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs, copies of which are available for inspection by the parties hereto, are hereby incorporated into and made a part of this contract."

The charge for the carriage, including the additional amount for the declared value of $3,500, was billed to and paid by the plaintiff in due course. The package was delivered to the plaintiff consignee at its Baltimore plant on Wicomico Street on July 16, 1956, and a receipt was given for it as received in good order, by an office employee who called it to the attention of an assistant manager of the plant on his return from lunch. The latter then had the large package still unopened carried to its desired destination in the plant. The box was not opened until August 9, 1956, 24 days after the consignee had receipted therefor as in good condition. When opened it was found that the large glass screen, about 4 feet square, was still in one piece but had been fractured throughout a large part of its surface

from a point called the apex which fanned out in an upwards direction to near the top and the sides of the glass plate.

At the conclusion of the evidence in the case it was apparent that there were two important questions, one of fact as to whether the damage to the glass screen was caused by the defendant during transportation, and second, a question of law as to whether the above quoted provisions of the tariff rules and regulations constituted a valid condition affecting the liability of the defendant, that is, whether the particular provisions requiring notice to be given to the carrier of a concealed loss within 15 days was a valid and binding provision. With respect to the question of law, it was noted that the precise question was a novel one in this court and in the absence of any relevant decision of the Court of Appeals of this Circuit it was suggested by the court to counsel that in the interest of economy of expense and effort the question of fact should be submitted to the jury, and the question of law reserved for decision by the court. It was thereupon agreed by counsel that the question should be submitted to the jury whether or not the damage was caused in transportation, and that if the jury answered this question "Yes", then the court should decide the question of law and if the provision requiring notice of concealed loss or damage was invalid, then the judgment should be entered by the Judge in favor of the plaintiff for the sum of $3,500; but if it was decided that the provision in the tariff rules with respect to required notice of concealed loss within 15 days was valid, then judgment should be entered for the defendant with leave to the parties respectively to appeal in due course. The jury answered the question "Yes", and therefore I must determine the question of law whether the tariff rule is valid. I conclude that it is and therefore the Clerk will be instructed to enter judgment for the defendant.

I will state my reasons for the conclusion as succinctly as possible.

Congress established a Civil Aeronautics Board in 1938. See 49 U.S.C.A. § 401 et seq.[1] In general its pattern follows the structure of the Interstate Commerce Commission Act regarding rail and motor carriers. Section 483(a) provides—"Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing *to the extent required by regulations of the Board,* all classifications, *rules, regulations,* practices, and *services* in connection with such air transportation. Tariffs shall be filed, posted, and published in such form and manner, and shall contain such information, as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void. The rates, fares, and charges shown in any tariff shall be stated in terms of lawful money of the United States, but such tariffs may also state rates, fares, and charges in terms of currencies other than lawful money of the United States, and may, in the case of foreign air transportation, contain such information as may be required under the laws of any country in or to which an air carrier or foreign air carrier is authorized to operate." (Italics supplied)

And the Board is given authority to make regulations. The relevant regulations applicable here are found in 14 Code of Federal Regulations, Part 221, p. 419; and particularly 221.38(a) (2) (3) and (4) p. 430.

1. Now 49 U.S.C.A. § 1301 et seq.

*"Rules and Regulations*

*"(a) Contents.* Except as otherwise provided in this part, the rules and regulations of each tariff shall contain: \* \* \*

"(2) All the terms, conditions, or other provisions which affect the rates, fares, or charges for air transportation named in the tariff,

"(3) all of the rates or charges for and the provisions governing terminal services and all other services which the carrier undertakes or holds out to perform on, for, or in connection with air transportation,

"(4) all other provisions and charges which in any way increase or decrease the amount to be paid on any shipment or by any passenger or by any charterer or which in any way increase or decrease the value of the services rendered to the shipment or passenger or charterer, \* \* \* ."

These apparently revised regulations were made effective in July 1954 and thus were in force in July 1956 when the particular shipment in this case was made.

While the particular question as to the validity of tariff rules for an air carrier is new in this court, I find the same general subject matter has been fully considered in the appellate courts of the Second and Ninth Circuits. Lichten v. Eastern Airlines, 2 Cir., 1951, 189 F.2d 939, 25 A.L.R.2d 1337; Herman v. Northwest Airlines, 2 Cir., 1955, 222 F.2d 326, certiorari denied 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751; Twentieth Century Delivery Service, Inc. v. St. Paul Fire & Marine Ins. Co., 9 Cir., 1957, 242 F.2d 292.

The principle established by these cases with regard to the Civil Aeronautics Board and the tariffs therewith filed by the air line carriers, is in substance this: The carrier is obliged by the statute and regulations to file these schedules in the first place. The Board may at once reject them as improper or unreasonable; but if not so rejected they continue to be valid and enforceable until the question of their alleged invalidity for unreasonableness or otherwise is challenged by the Board or by interested parties before the Board, and held by the Board to be invalid. In a suit against a carrier the tariff schedules must be accepted and applied by the courts in litigation unless and until the Board has otherwise ruled. This is in accordance with the modern judicial point of view with respect to federal regulatory agencies. And the above cited decisions of the Second and Ninth Circuits are to that effect. In the Lichten case it was held that a tariff rule exculpating the carrier from liability for the loss of a passenger's jewelry was valid and enforceable. In the Herman case the rule applicable to accidents to passengers requiring suit to be brought within one year was held valid and enforceable. And in the Ninth Circuit the ruling was to the same effect that the limitation as to the amount of liability of the carrier was upheld unless a larger value had been declared.

In 1953 the Civil Aeronautics Board decided that a carrier's rule requiring notice of injury to a *passenger* within thirty days was invalid for the reasons therein stated at length, In re Battista, 1952, U. S. Aviation Reports, 471; but no decision of the Board has been called to my attention holding that a provision with regard to requirement of notice of concealed loss or damage or otherwise limiting conditions as to time of suit, was invalid.

Counsel for the plaintiff cites a number of federal district court cases and some State cases holding in effect that regulations as to the time of notice and suit in air line schedules were not binding on the plaintiff, especially in the particular case. But on examination it is found that all the federal district court cases cited were decided prior to the decision in the Herman case in the Second Circuit and all of them related only to claims by passengers and none of them involved provisions as to timely notice of damage to cargo shipments.

■ Counsel for the plaintiff also contend that the schedule tariff rule in this particular case is invalid because it is not within the scope either of the statute (49 U.S.C.A. § 483(a)) or the regulation of the Board. I do not think the point is sound when the text of the statute and the regulation are closely read. A similar contention was made in the Herman case but rejected by the unanimous court. In the opinion by Circuit Judge Hand the substance of the applicable regulation was recited. Apparently the wording of the regulation then in effect was slightly different from the fuller and more explicit regulation promulgated by the Board in 1954; but on comparing the two, I find no difference in substance or scope. The Herman case dealt with an accident to a passenger arising in May 1947. At that time the applicable regulations were to be found in the 1st Cum.Supp.1943 Code of Fed. Regulations, Book 3. Subsequently in 1949 it appears that the Board re-arranged and possibly to some extent revised the wording of the regulations; and again they were revised to their present form in 1954.

### 1954 Revision

Part 221.38(a) (2) (3) (4) (1954)

"(2) All of the terms, conditions, or other provisions which affect the rates, fares, or other charges for air transportation named in the tariff,

"(3) All of the rates or charges for and the provisions governing terminal services and all other services which the carrier undertakes or holds out to perform on, for, or in connection with air transportation,

"(4) All other provisions and charges which in any way increase or decrease the amount to be paid on any shipment or by any passenger or by any charterer or *which in any way increase or decrease the value of the services* rendered to the shipment or passenger or charterer,"

### 1943

Part 224.1(e) (7) (1943)

"General Rules which govern the tariff, i. e. state conditions *which in any way affect* the rates named in the tariff, or *the service under such rates.*"

The practice and procedure of air line companies in filing tariff schedules of rates and rules was fully explained in the testimony of Mr. Smith, Agent for about thirty air line companies, who was fully familiar with the subject. He testified that it is well known that a tariff consists mainly of two parts, the rates and the rules. With respect to the particular rule in question in this case, that is a requirement that notice of concealed loss and damage must be given in 15 days, he said that that rule was uniform in tariffs filed by the 30 air line companies for which he acted in filing schedules.

■ The damage to the plaintiff's cargo in this case occurred in July 1956. In the waybill given by the carrier to the shipper it was plainly brought to the attention of the shipper that the shipment was accepted by the carrier subject to the conditions of its tariff on file with the Board. During the following nearly three years the plaintiff has made no effort to challenge before the Board the validity of the rule in question. Its counsel contends that the rule should

not be binding on it because the officers or employees of the shipper did not in fact know of the existence of the rule. Even their traffic manager produced as their last witness so testified, saying that as he had had little experience in shipping cargo by air he had never had occasion to inquire what the rules of the carrier were which had been filed with the Board, and a copy of which, as Smith testified was currently made available to shippers on request. But as the carrier was required to file the rules with the Board and the shipment was made in reference thereto, it is legally immaterial whether the shipper was personally ignorant of the rule when he had made no inquiry about it.

For these reasons I direct the Clerk to enter judgment for the defendant.