Elaine L. KLICKER and Robert A. Klicker, Plaintiffs-Appellants,

v.

NORTHWEST AIRLINES, INC., Defendant-Appellee.

No. 75–2794.

United States Court of Appeals, Ninth Circuit.

Nov. 1, 1977.

Bruce R. Toole, Crowley Kilborne, Haughey, Hanson & Gallagher, Billings, Mont. (argued), for plaintiffs-appellants.

David S. Doty, Popham, Haik, Schonbrick, Kaufman & Doty, Minneapolis, Minn. (argued), for defendant-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and EAST,* District Judge.

HUFSTEDLER, Circuit Judge:

The Klickers sued Northwest Airlines, Inc. ("Northwest") for the "wrongful death" of Sir Michael Robert, the Klickers' valuable golden retriever, caused by Northwest's negligent carriage of the animal. On July 20, 1971, the Klickers flew on Northwest from Minneapolis, Minnesota, where Michael was training for championship field trials, to Billings, Montana. Northwest required the Klickers to ship Michael in the cargo hold as "excess baggage."

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

The Klickers informed Northwest of Michael's value (alleged to be $35,000), but they were not permitted to declare that value nor to pay additional charges for carriage of the dog based on a declared valuation. Northwest demanded and received twice the ordinary excess baggage charge to ship the dog. The parties stipulated that Michael's death was caused by Northwest's negligence in transporting him.

In defense, Northwest relied on three tariff rules which, variously, fully exculpate it from any liability for its negligence, or limit its liability to $500 or $5,000, respectively. The district court held that Northwest's liability was limited to $5,000 and entered judgment in that sum for the Klickers.[1] Both sides appeal. The Klickers contend that the tariff that purports fully to exculpate Northwest from its own negligence is void and that the airline is foreclosed from relying on the other tariffs limiting its liability by reason of the airline's contrary construction of the tariffs when it accepted Michael for shipment and by its conduct in refusing to permit them to declare the excess valuation. Northwest argues that all of the tariffs apply, especially the tariff that gives the Klickers nothing, that primary jurisdiction to decide these issues rests exclusively with the Civil Aeronautics Board ("CAB"), and that invalidation of the exculpatory tariff by the CAB in another case, while this case was pending on appeal, does not apply to invalidate the tariff as to the Klickers. We agree with the Klickers; we vacate the damage award, and remand the case for a new trial limited to the common-law damage issues.

The exculpatory tariff, Tariff Rule 345(D)(3), provided that Northwest would "not be liable for the loss, death, or sickness" of any live animal it transported. Under Rule 345, of which Rule 345(D)(3) is a part, live animals were acceptable as baggage on Northwest, but "the animal and its container will not be included in the free baggage allowance . . . and will be subject to 200% of the otherwise applicable excess baggage charge . . . ." (Rule 345(A)(2)(h)(1).) Northwest permitted large dogs to fly only in the cargo compartment.[2] (Rule 345(B).)

We first dispose of Northwest's primary jurisdiction argument by holding that it has no application where, as here, the CAB has heretofore decided that the exculpatory tariff rule is "unlawful" and ordered its cancellation. (*Hughes Air Corp., et al.*, CAB Order No. 74–12–124, 40 Fed.Reg. 1121, 1122–23 (1975). *See Live Animals as Baggage*, CAB Order No. 74–4–20, 39 Fed.Reg. 12915 (1974) (tentative finding tariff was unlawful); *Investigation of Premium Rates for Live Animals and Birds*, Docket No. 21474, CAB Order No. 73–6–103, at 36 (decided June 26, 1973).) The CAB decision was based on "long established legal principles [which have] consistently held it to be against public policy for a common carrier, by special or express contract, to exempt itself from liability for loss or damage due to its own negligence." (*Hughes Air Corp., supra*, at 1122 & n. 5.)[3]

---

1. The court below rejected Northwest's motion for summary judgment based on the exculpatory tariff, but it did not reach the issue of its legality. Rather, it reasoned that nothing in the tariffs precluded a passenger from declaring a value pursuant to Rule 370 and that Northwest's refusal to permit the declaration of value was "unjustified" when the airline was willing to transport animals and it assured safe transport. The court concluded from these observations that the exculpatory tariff was not the sole determinant of the parties' rights and rejected Northwest's argument that it precluded liability. The court did not explain its ultimate conclusion that the $5,000, not the $500, limitation of Rule 370 applied. All tariff rules cited may be found in Local & Joint Passenger Rules Tariff No. PR–6 (eff. July 15, 1970).

2. Large dogs are those which would not fit in a container 21 inches × 16 inches × 8 inches. The regulation also required that the animal shipped should be "harmless, inoffensive, odorless, and . . . require no attention in transit," Rule 345(A)(2), and that it travel in a container made of metal, wood or polyethylene, inspected and approved by Northwest at the time of acceptance, Rule 345(B).

3. Only four carriers filed objections; Northwest was not among them. These related to the application of the CAB's decision on clauses relating to governmental regulation, and the special problems of a carrier serving the Aleu-

Primary jurisdiction is a concept that expresses both initial deference to the administrative agency and the concern for conservation of judicial resources. (*E. g., Nader v. Allegheny Airlines* (1976) 426 U.S. 290, 303–04, 96 S.Ct. 1978, 48 L.Ed.2d 643; *Southwestern Sugar & Molasses Co., Inc. v. River Terminals* (1959) 360 U.S. 411, 420–21, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (hereinafter *"Southwestern Sugar"*). *See generally*, K. Davis, Administrative Law of the Seventies § 19.01 *et seq.* (1976 & Supp.1977); Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964).) Neither purpose is served by using the doctrine when the agency has already said what it thinks about this exculpatory tariff. (*E. g., United States v. Western Pacific Railroad Co.* (1956) 352 U.S. 59, 69, 77 S.Ct. 161, 1 L.Ed.2d 126. *Cf. Nader v. Allegheny Airlines, supra*, 426 U.S. at 308–09, 96 S.Ct. 1978 (White, J., *concurring*).)

The decision of the CAB invalidating Rule 345(D)(3) does not bind us because the question whether a tariff is against public policy is ultimately a judicial question requiring the application of federal common law. (*Southwestern Sugar, supra*, 360 U.S. at 420–21, 79 S.Ct. 1210; *Great Northern Railway Co. v. Merchants Elevator Co.* (1922) 259 U.S. 285, 290–91, 42 S.Ct. 477, 66 L.Ed. 943; *Milhizer v. Riddle Airlines, Inc.* (E.D.Mich.1960) 185 F.Supp. 110, 112; *cf. Twentieth Century Delivery Service, Inc. v. St. Paul Fire & Marine Insurance Co.* (9th Cir. 1957) 242 F.2d 292, 299.) We nevertheless give substantial weight to the CAB's decision (*see, e. g., Locust Cartage Co. v.*

*Transamerica Freight Lines, Inc.* (1st Cir. 1970) 430 F.2d 334, 341), an obligation we easily assume because we agree with the CAB that Rule 345(D)(3) is void as against public policy.[4] (*Union Pacific Railroad Company v. Burke* (1921) 255 U.S. 317, 321–23, 41 S.Ct. 283, 65 L.Ed. 656; *Boston & Maine Railroad v. Piper* (1918) 246 U.S. 439, 445, 38 S.Ct. 354, 62 L.Ed. 820; *Davis v. Northeast Airlines, Inc.* (N.H.Sup.Ct.1976) 362 A.2d 208; *Odom v. Pacific Northern Airlines Inc.* (Alaska Sup.Ct.1964) 393 P.2d 112. *See also Sommer Corporation v. Panama Canal Co.* (5th Cir. 1973) 475 F.2d 292, 297–98; *Northwest Airlines, Inc. v. Alaska Airlines, Inc.* (9th Cir. 1965) 351 F.2d 253, 256–58.) As the Supreme Court stated in *New York, New Haven & Hartford Railroad Co. v. Nothnagle* (1953) 346 U.S. 128, 136, 73 S.Ct. 986, 990, 97 L.Ed. 1500:

> " 'A carrier who stipulates not to be bound to the exercise of care and diligence "seeks to put off the *essential duties* of his employment." It is recognized that the carrier and the individual customer are not on an equal footing. "The latter cannot afford to higgle or stand out and seek redress in the courts." ' *Santa Fe P. & P. R. Co. v. Grant Bros. Construction Co.*, 228 U.S. 177, 184–85, 33 S.Ct. 474, 57 L.Ed. 787 (1913)." [Emphasis in original.]

We are aware that the Second Circuit has taken a contrary view in *Tishman & Lipp, Inc. v. Delta Air Lines* (2d Cir. 1969) 413 F.2d 1401; *Lichten v. Eastern Airlines* (2d Cir. 1951) 189 F.2d 939.[5] We decline to

---

tion Islands. Except for the latter, no carrier objected to the CAB's finding that the exculpatory tariff was unreasonable on its face. *Hughes Air Corp., supra*, 40 Fed.Reg. at 1122.

4. The CAB relied in part on admiralty cases which have consistently held invalid as against public policy such exculpatory clauses in private maritime contracts. *See Hughes Air Corp., supra*, 40 Fed.Reg. 1122, n. 5, *citing United States v. Atlantic Mutual Ins. Co.* (1952) 343 U.S. 236, 239–42, 72 S.Ct. 666, 96 L.Ed. 907; *The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.* (1935) 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016. *See also Bisso v. Inland Waterways Corp.* (1955) 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911. While these cases are not directly applicable in the case of tariffs of regulated

carriers, Southwestern Sugar, *supra*, 360 U.S. at 417–20, 79 S.Ct. 1210, it is certainly permissible for the CAB to adopt their reasoning as a standard of "unreasonability." *Id.*

5. Other cases which are sometimes cited as standing for this proposition are distinguishable as they involve the question whether a passenger is bound by a released value limitation which gave him the opportunity to pay more for a greater liability coverage. *Vogelsang v. Delta Air Lines, Inc.* (2d Cir. 1962) 302 F.2d 709 ($100 limit unless passenger paid 10 cents for each $100 additional value); *Twentieth Century Delivery Service, Inc. v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 1957) 242 F.2d 292; *Blair v. Delta Air Lines, Inc.* (S.D.Fla.

adopt the *Lichten* rationale because it is flatly wrong.[6] The *Lichten* majority held that the common-law bar to exculpatory tariffs did not apply to carriers regulated by the Civil Aeronautics Act ("CAA," now, the Federal Aviation Act ("FAA")). It reasoned that Congress impliedly abrogated the federal common law when, in enacting the CAA, it did not expressly prohibit exculpatory tariffs, as it did when it wrote the Interstate Commerce Act ("ICA"). (*Id.* at 941.) *Lichten* makes little sense from the standpoint of ordinary rules of statutory construction and none when the legislative history of the ICA and CAA is read. As Judge Frank pointed out in his vigorous dissent, the "Carmack Amendment" to the ICA (49 U.S.C. § 20(11) (1971)), upon which the majority relied, was intended merely to declare pre-existing federal common law and to prevent the application of state law that would have generated non-uniformity of tariffs. (189 F.2d at 942–45.) Moreover, the *Lichten* majority completely ignored Section 1106 of the FAA (49 U.S.C. § 1506 (1971)), taken intact from its predecessor section of the CAA,[7] which provides:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Congress knew when it drafted both statutes that the common law prevented a common carrier from completely exculpating itself from its own negligence. (*E. g., Union Pacific Railroad Co. v. Burke, supra,* 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656.) We refuse to impute to Congress an intent to abrogate silently this area of the common law by omitting to single it out for honorable mention at the same time that it expressly incorporated the entire federal common law applicable to carriers in Section 1106. (*See also United States v. Atlantic Mutual Insurance Co.* (1951) 343 U.S. 236, 239–40, 72 S.Ct. 666, 96 L.Ed. 907 (the common-law bar to exculpatory tariffs was so well-settled, legislative approval is assumed, absent explicit repeal in new legislation regulating carriers; *citing The Kensington* (1902) 183 U.S. 263, 268–69, 22 S.Ct. 102, 46 L.Ed. 190).)

■ Again relying on *Lichten*, Northwest argues that the Klickers were bound by the exculpatory tariff because it had not been invalidated when the Klickers took their trip, and the Klickers had not present-

---

1972) 344 F.Supp. 360, *aff'd* (5th Cir. 1973) 477 F.2d 564; *Mao v. Eastern Airlines Inc.* (S.D.N.Y.1970) 310 F.Supp. 844 (passenger failed to declare extra value though procedure existed). *See also Randall v. Frontier Airlines, Inc.* (W.D.Ark.1975) 397 F.Supp. 840 (passenger bound by tariff though no actual notice could pay more for greater coverage). *But see N.Y., N.H. & H. R.R. Co. v. Nothnagle, supra,* 346 U.S. at 135–136, 73 S.Ct. 986; *Union Pacific R.R. Co. v. Burke, supra,* 255 U.S. at 321–23, 41 S.Ct. 283; *Boston & Maine R.R. v. Piper, supra,* 246 U.S. at 445, 38 S.Ct. 354; *Sommer Corp. v. Panama Canal Co., supra,* 475 F.2d at 298 (absent actual choice of rates limitations on liability are invalid). *Twentieth Century Delivery Service, Inc. supra,* has been cited as following the rule of *Lichten v. Eastern Airlines, see Gravure Div. of Publications Corp. v. Amer. Airlines Inc.* (D.Md.1959) 173 F.Supp. 752, 755; *Odom v. Pacific Northern Airlines, Inc., supra,* 393 P.2d at 117, n. 18. However, *Twentieth Century* involved a dispute about whether a concededly valid released valuation limit to liability applied to shield a carrier not a party to the original agreement who was delivering airfreight shipped pursuant to it. The court specifically noted that the case did not involve a situation where there was no bona fide alternative to the "lesser released value" as in the instant case. *Lichten* was cited in *Twentieth Century* only for its remarks on the primary jurisdiction doctrine. (242 F.2d at 301–02 & n. 9.)

6. *Lichten* has been uniformly criticized by commentators. Note, Air-Carrier Tariff Provisions Limiting Liability for Negligence, 70 Harv.L. Rev. 1282, 1287–88; 25 So.Cal.L.Rev. 190 (1952); 65 Harv.L.Rev. 341 (1951). State courts have flatly refused to follow the case. *Davis v. Northeast Airlines, Inc., supra,* 362 A.2d at 209–11 (holding Rule 345 void in case involving death of a dog); *Odom v. Pacific Northern Airlines, Inc., supra,* 393 P.2d at 116–17 (adopting Judge Frank's dissent). *But see contra Furmanik v. Northeast Airlines, Inc.* (Fla.Dist.Ct.App.1972) 266 So.2d 352 (death of dog).

7. *See* House Rep.No.2360, 85th Cong.2d Sess. (1958), in 1958 U.S.Code Cong. & Admin.News, pp. 3741, 3758 (the foregoing section was adopted intact from the Civil Aeronautics Act, with no intended effect on prior law).

ed the issue to the CAB. The argument rests on *Lichten*'s misunderstanding of the primary jurisdiction doctrine. *Lichten* correctly recognizes that plaintiffs who have not first asked the agency to invalidate a tariff may be required by the court to seek a decision from the agency before the court will decide a tariff question. But *Lichten* then confuses this principle with the jurisdictional rule requiring exhaustion of administrative remedies. The primary jurisdiction doctrine is a rule of initial deference, not a judicially imposed limitation on the power of the court. Thus, when the agency has not decided the tariff question, the district court does not dismiss the action; it simply stays the litigation pending resort to the administrative tribunal. (*See Nader v. Allegheny Airlines, supra,* 426 U.S. at 296–97, 305–07, 96 S.Ct. 1978; *Southwestern Sugar, supra,* 360 U.S. at 421–22, 79 S.Ct. 1210.) No deference is required, as we have pointed out, when the agency has decided the issue in another case.

The effect of the CAB decision is to invalidate the same tariff as in the Klickers' case. In legal contemplation, no retrospectivity question is involved because the tariff was always invalid; the declaration of invalidity is simply the event which reveals the pre-existing unlawfulness of the tariff. (*See, e. g., Great Northern Railway Co. v. Merchants Elevator Co., supra,* 259 U.S. at 291, 42 S.Ct. 477; *Continental Charters, Inc.* (1953) 16 C.A.B. 772, 775 (order finding tariff unjust and unreasonable on judicial remand under primary jurisdiction doctrine "must of necessity contain a finding of past unlawfulness"); *Southwestern Sugar, supra,* 360 U.S. at 420–22, 79 S.Ct. at (after agency determination, court will finally adjudicate the validity of the challenged tariff as between the parties).)[8]

We turn to the question whether Tariff Rule 370(A) (limiting liability to $500) or Tariff Rule 370(C) (limiting liability to $5,000) applies to this case.

Carriers may partially limit their liability for injury, loss, or destruction of baggage on a "released valuation" basis, whereby in exchange for a low carriage rate, the passenger-shipper is deemed to release the carrier from liability beyond a stated amount. The released valuation limitations bind the passenger-shipper to the restriction on liability, however, only if he has notice of the rate structure and is given the opportunity to pay the higher rate in order to obtain greater protection. (*New York, New Haven & Hartford R. R. Co. v. Nothnagle, supra,* 346 U.S. at 135–36, 73 S.Ct. 986; *Union Pacific R.R. Co. v. Burke, supra,* 255 U.S. at 321–23, 41 S.Ct. 283; *Boston & Maine R. R. v. Piper, supra,* 246 U.S. at 445, 38 S.Ct. 354; *Sommer Corp. v. Panama Canal Co., supra,* 475 F.2d at 297–98. *See also* 14 C.F.R. § 221.176 (1977) (requiring posting of air carrier released valuation limits).)

Tariff Rule 370(A) limits Northwest's liability to $500 for loss or damage of "any personal property, including baggage . . . unless the passenger, at the time of presenting such property for transportation, when checking in for a flight, has declared a higher value and paid, for each carrier via which such property is to be transported an additional transportation charge, at the rate of 10 cents for each $100.00 or fraction thereof . . . by which such higher declared value exceeds the applicable amount set forth above, in which event carrier's liability shall not exceed such higher declared value. . . ."

---

**8.** As the CAB pointed out in *Continental Charters, supra,* 16 C.A.B. at 776: "[W]e must not lose sight of the realities involved in the administration of the Act. We are not possessed of a staff of sufficient size to examine each and every tariff rule when filed to determine the reasonableness thereof . . . . Of necessity, then, instances of unjust, unreasonable, and discriminatory rules may continue on file until our attention is directed to them by complaints filed by members of the public who have been adversely affected by such rules . . . . It is at once apparent that the interest which Congress anticipated that the public would take in the proper administration of the Act would be completely discouraged if, when a complaint was filed, we recognized the merit of it but failed to provide adequate relief. . . ." [citation omitted].

Rule 370(A) has no application because the airline refused to permit the Klickers to declare a valuation of their dog. Until the CAB invalidated the exculpatory tariff, Northwest's primary contention has always been that it had no liability for the loss of the dog. Northwest's conduct in refusing to permit valuation to be declared is consistent with its reliance on the exculpatory tariff and with the nonapplicability of Rule 370(A). Under these circumstances, Northwest will not be heard to say that Rule 370(A) applied to the Klickers' shipment and that the Klickers knew or had any chance to comply with the Rule. Northwest's situation is no brighter when it seeks to rely on Tariff Rule 370(C). That Rule provides: "No participating carrier will accept for transportation or for storage personal property, including baggage, *the declared value of which exceeds . . .* [for Northwest] . . . $5,000." [Emphasis supplied]. Rule 370(C) functions merely as a ceiling on valuations declared pursuant to Rule 370(A). By its own terms, this Rule cannot apply to the Klickers because the airline refused to permit any declared valuation for their dog. If the airline erred in accepting the animal, the responsibility for the mistake falls on the airline, not on the innocent shipper.[9]

Because Northwest's defenses based on the Tariff Rules are invalid, the damage issues must be tried anew, free from those defenses. (*See Union Pacific Railroad v. Burke, supra*, 255 U.S. at 323, 41 S.Ct. 283.) We do not reach the choice-of-law questions that will arise on retrial of damages. Those issues are not simple, and the district court has not decided any of them.[10]

The damage portion of the judgment is vacated and the cause is remanded to the district court for a new trial on the damage issues. The Klickers will have their costs on appeal.

---

**9.** *See also* Tariff Rule 365(A) which provides that carriers are not liable for baggage "not acceptable . . . pursuant to Rules 340 and 345." It undercuts Northwest's argument that the dog was not accepted for liability purposes due to Rule 370(C). The dog was "acceptable" pursuant to Rule 345(A) and was thus baggage as to which Northwest remains liable pursuant to Rule 365(A). Northwest cannot be permitted to assert instead that the dog was not acceptable pursuant to Rule 370(C) which was never intended to apply to shipments of live animals.

**10.** Jurisdiction was founded on diversity. Ordinarily the law of the forum state would be applied to ascertain the correct measure of damages. However, two problems exist in this approach: (1) Federal common law, rather than state law may be applicable by reason of an overriding federal interest in the uniformity of obligations of domestic air carriers (*see, e. g., Blair v. Delta Air Lines, Inc., supra*, 344 F.Supp. 365; *Braughton v. United Air Lines, Inc.* (W.D.Mo.1960) 189 F.Supp. 137, 141; Note, *Air Carrier Tariff Limitations, supra*, n. 6; 70 Harv.L.Rev. at 1283–85); and (2) even if state law applies, Montana, in applying its conflicts rule, might select the law of one of the other states, such as Minnesota, which were involved in this multistate drama.