William H. SCHAEFER, Jr., Plaintiff,

v.

NATIONAL AIRLINES, INC., Defendant.

Civ. A. No. J–79–1795.

United States District Court,
D. Maryland.

Sept. 23, 1980.

Joel J. Feinberg, Piper & Marbury, Baltimore, Md., for plaintiff.

Donald DeVries, Jr., David W. Allen, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

On March 25, 1979, defendant and his party which consisted of three members of his family and a business associate and his wife, had confirmed reservations on National Airlines Flight No. 106 from Miami, Florida to Washington, D. C. Plaintiff and his family lived in Maryland and were attempting to return home from a week's vacation in Florida. Upon arrival at the airport in Miami, plaintiff was informed that Flight 106 had been cancelled although no explanation was tendered. At the suggestion of one of defendant's employees, plaintiff inquired about alternative transportation with Eastern Airlines, only to be informed that Eastern could not accommodate them. Plaintiff then discussed his problem with one of defendant's agents. He was informed that defendant could not offer them a flight home for two days. Plaintiff expressed concern in that he had business meetings scheduled for the next day which required his presence, his children had to return to school, and his business associate also need to return to Maryland. Defendant refunded the purchase price of the six return tickets and gave plaintiff $250.00 to help defray expenses. Plaintiff chartered a private jet for $3,100.00 and returned home on that same day. The record shows that the reason for the cancellation of Flight 106 was that the aircraft scheduled to fly from Tampa, Florida to Los Angeles, California broke down in New York and the aircraft which was scheduled to fly Flight 106 was substituted for the Tampa–Los Angeles flight. Plaintiff has brought this action against National alleging that it breached its common law duty to him as a common carrier. Plaintiff claims as damages the expenses incurred as well as inconvenience, lost time, embarrassment, indignity, and wounded feelings. Plaintiff prays $25,000 in actual damages and $200,000 in punitive damages.

Defendant has moved for summary judgment on the ground that the tariff it was required to file with the Civil Aeronautics Board (CAB) limits plaintiff's remedies to a refund of the purchase price of the ticket along with payment for certain incidental expenses, such as lodging and meals. In response, plaintiff has argued that the portion of the tariff on which National relies is invalid and illegal and, thus, cannot be raised as a defense. The above facts are not in dispute and, therefore, a decision on this issue by way of summary judgment is appropriate.

Rule 380(c), which is part of the tariff National had filed with the CAB, provides the obligations which defendant assumes in the event of a cancellation. In summary, the airline is first required to make alternative arrangements on its next available flight and if arrangements acceptable to the passenger cannot be made, then the airline is obligated to try to make alternative arrangements with another airline. The final alternative to the airline is to make an involuntary refund to the passenger. Rule 380(G)(9) provides that National will be responsible for providing the passenger with certain amenities including meals, lodging, phone calls and ground transportation. Rule 380(H) provides: "Except to the extent provided for in this rule, no carrier shall be liable for failing to operate any flight according to schedule or for changing the schedule of any flight, with or without notice to the passenger."

It is not disputed that National did indeed comply with Rule 380 in this case. Therefore, unless Rule 380(H) is found to be invalid, plaintiff's cause of action must fail.

It is well settled that a tariff, properly filed with the CAB, governs the rights and liabilities between a passenger and an airline. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir. 1978). Limitations on liability contained within tariffs are binding on the parties even if the limitations are not embodied within the contract. *Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401, 1404 (2d Cir. 1969). Plaintiff contends, however, that Rule 380(H) was invalid at the time of this incident and hence is not a valid defense to the present action. The entire foundation of plaintiff's argument rests on the fact that the CAB has subsequently cancelled Rule 380(H) based upon its conclusion that it was "unjust, unreasonable and unlawful...." 44 Fed.Reg. 24613 (1979). Plaintiff urges this Court to defer to the expertise of the CAB and find that Rule 380(H) was invalid.

It is obvious that an action for damages for a flight cancellation and Rule 380(H) are inconsistent and that the common law remedy in this case cannot logically co—exist with the limitation of liability. *See Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Therefore, plaintiffs will have no common law cause of action unless the action of the CAB in cancelling Rule 380(H) is deemed to invalidate it on the date of the incident in question.

The Court has been unable to find any cases which decide precisely this issue. The most analogous case law appears to have been decided under the limitation of liability provisions of tariffs dealing with loss of baggage. In *Tishman & Lipp, Inc.*, 413 F.2d 1401 (2d Cir. 1969), the Second Circuit was presented with the issue of whether or not to enforce a limitation of liability provision contained in a tariff which wholly disclaimed liability for the loss of jewelry which was shipped as baggage. Plaintiff had shipped as air freight two jewelry cases, one of which was missing on arrival. The missing case had a value of $50,000. The defendant asserted as a defense a tariff which stated that jewelry would not be carried as baggage and disclaimed liability for loss of jewelry. Subsequent to this incident, the CAB declared that airlines could no longer refuse to carry jewelry as luggage but that liability could be limited to $500.00. Plaintiff argued that this invalidated the tariff and, therefore, it could not be raised as a defense. The Court rejected this argument on the grounds that the CAB order did not invalidate the tariff but merely changed it, and that it was irrelevant in that plaintiff had never sought to have the carrying cases checked as baggage but rather had it sent as air freight. The Court implied, however, that even if the CAB ruling did have a bearing on the limitation of liability in question, it would not affect its validity at the time of the incident in question. *Id.* at 1406 n. 8.

The Second Circuit left undisturbed the holding of the district court that neither it nor the CAB had the power to invalidate a tariff retrospectively. *Tishman & Lipp, Inc. v. Delta Airlines*, 275 F.Supp. 471 (S.D.N.Y.1967). The basis for the district court's

holding concerning the power of the CAB to retrospectively invalidate a tariff was the ruling of the Supreme Court in *T. I. M. E., Inc. v. United States*, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). In that case, the Supreme Court held that a shipper could not challenge the reasonableness of a motor carrier's past charges which were in accordance with tariffs filed with the Interstate Commerce Commission. The Court reasoned that Part II of the Interstate Commerce Act, the Motor Carrier Act, unlike Parts I and III, which relate to rail carriers and water carriers, did not contain the power on the part of the I.C.C. to award reparations on the basis of unreasonable past rates. Thus, the Act itself was not intended to give shippers a cause of action against motor carriers to recover past unreasonable rates and shippers could not assert unreasonableness as a defense in a suit to collect past charges. The Court also held that a common law right to challenge past unreasonable rates did not survive the Interstate Commerce Act notwithstanding a clause in the Act which stated that it was not intended to alter the available common law remedies. As only the commission could decide what constituted a reasonable rate, a right permitting courts to decide what constitutes a reasonable rate would be inconsistent with the Act itself. The Court also noted that a procedure whereby the Courts would defer the issue of whether or not a particular rate was reasonable to the I.C.C. would in effect permit the Commission to do indirectly what Congress had not permitted it to do directly. The Court in *Tishman* found that the Federal Aviation Act paralleled the Motor Carrier Act and, therefore, concluded that both the Court and the CAB lacked the authority to invalidate a tariff retrospectively. 275 F.Supp. at 475–79.

In direct contradistinction to the opinion in *Tishman* is the opinion of the Ninth Circuit in *Klicker v. Northwest Airlines*, 563 F.2d 1310 (9th Cir. 1977). In that case, plaintiffs brought a suit alleging that the airline had negligently caused the death of their show dog, alleged to be worth $35,000, when it was shipped as excess baggage. The airline relied on a number of limitations of liability contained in filed tariffs, including one which totally exculpated the airline for any liability due to the death or sickness of any live animal transported. Subsequent to the death of the dog, the CAB declared that particular tariff illegal.

In commenting on the *Tishman* line of reasoning, the Court stated that it is "flatly wrong." The Court came to the conclusion that the Federal Aviation Act was not intended to abrogate the common law rule that a common carrier could not exculpate itself from its own negligence. As to the issue of retrospectivity, the Court stated that none was involved "because the tariff was always invalid; the declaration of invalidity is simply the event which reveals the pre–existing unlawfulness of the tariff." 563 F.2d at 1315.

The *Klicker* decision is distinguishable from the instant case in that it involved a complete exculpation of liability as opposed to a limitation of liability as in the present case. Clearly, the actual damages sustained in *Klicker* were also more severe than in the instant case. These distinctions notwithstanding the Court is not inclined to follow the reasoning of *Klicker*.

The decision of the CAB in cancelling Rule 380(H) was based in large part on considerations of policy as opposed to questions of legality. In its announcement tentatively stating that Rule 380(H) would be cancelled, the CAB discussed considerations of a marketplace changing under the Deregulation Act. The Board was especially concerned that Rule 380(H) could be construed to cover long term changes in schedules such as withdrawal from a market. 44 Fed.Reg. 24613. The Board also made extremely clear that the Board was engaging in its legislative function when it cancelled Rule 380(H). Thus, this determination was made on the "basis of general legal procedures and policy considerations." 44 Fed. Reg. 55617 (1979). Therefore, the determination of the Board was that Rule 380(H) was inappropriate under present market conditions. This was not a determination that Rule 380(H) was and always had been invalid. Further, after its final order can-

celling Rule 380(H) on September 27, 1979, the Board saw fit to extend the effective date of its order, leaving Rule 380(H) in force until May 22, 1980. The Court does not, therefore, interpret the ruling of the CAB as declaring that Rule 380(H) was invalid at the time of the incident in question.

Further, this Court entertains grave doubts as to both its power and that of the CAB to declare that a tariff was retrospectively invalid. The decision as to whether or not a tariff is unreasonable is, of course, one to be made by the CAB, but that can only be done prospectively and not retrospectively. *Emery Air Freight Corp. v. United States*, 499 F.2d 1255 (Ct.Cl.1974). This Court agrees with *Tishman* that it cannot exercise a power which has been denied to the CAB by Congress. Thus, a tariff will be effective up until the time it is cancelled by the CAB. *See Alco–Gravure Division of Publications Corp. v. American Airlines*, 173 F.Supp. 752 (D.Md.1959). Because Rule 380(H) was effective at the time of the incident question, it will be given effect. Therefore, summary judgment must be granted in favor of the defendant.